(No. 67302.—

UNITED CITIZENS OF CHICAGO AND ILLINOIS *et al.*, Appellants, v. COALITION TO LET THE PEOPLE DECIDE IN 1989 *et al.*, Appellees.

*Opinion filed November 21, 1988.*

Russell J. Stewart, of Park Ridge, for appellants.

David R. Melton and Marshall L. Blankenship, of Keck, Mahin & Cate, and Thomas E. Johnson, Leslie Ann Jones, Standish Willis, Paul Williams, and Ruben Castillo, all of Chicago, for appellees.

Mark E. Jones, Mitchell Ware and David S. Allen, of Jones, Ware & Grenard, of Chicago, for *amicus curiae* Coalition for a 1991 Election.

Jerome B. Meites, of Chicago, for *amici curiae* Chicago Council of Lawyers *et al.*

Burton S. Odelson, of Odelson & Sterk, Ltd., of

Evergreen Park, for *amicus curiae* Michael S. Hole-winski.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On April 7, 1987, Harold Washington was elected to a second four-year term as mayor of Chicago. Mayor Washington took the oath of office and began his term on May 4, 1987. On November 25, 1987, with 41 months remaining in his term, Mayor Washington died. Pursuant to section 21—5.1 of the Illinois Municipal Code, the vice mayor, Alderman David Orr, became the interim mayor. (Ill. Rev. Stat. 1985, ch. 24, par. 21—5.1.) On December 1, 1987, the Chicago city council declared the office of mayor vacated and then elected Eugene Sawyer as acting mayor on December 2, 1987. (Ill. Rev. Stat. 1985, ch. 24, par. 3—4—6.) Eugene Sawyer continues to serve as acting mayor.

On March 23, 1988, the Coalition to Let the People Decide in 1989 (the Coalition) petitioned the Chicago Board of Election Commissioners (the Board), requesting the Board to schedule an election in 1989 to fill the existing mayoral vacancy. On April 5, 1988, the Board met but did not decide the issue. When the Coalition filed an action against the Board and the city clerk seeking declaratory and injunctive relief, Alderman Bobby Rush, Jesse Miller and Nancy Jefferson joined the Coalition. On April 11, 1988, Alderman David Orr sought leave to intervene in favor of the Coalition.

On April 19, the United Citizens of Chicago and Illinois (United Citizens) with Kenneth Hurst filed a separate action against the city and State Board of Election Commissioners and the Illinois State Board of Elections (State Board) and others in the circuit court of Cook County, seeking to enjoin the holding of any election to fill the mayoral vacancy. Later, on April 27, the Midwest

Voter Registration Education Project (Midwest Voter) also petitioned to intervene in both causes. On April 28, the Coalition petitioned to intervene in the United Citizens action. On April 26 and 28, the League of Women Voters of Chicago (League) and the Chicago Council of Lawyers (Council) filed *amicus curiae* memoranda of law in support of the Coalition in both actions. The circuit court consolidated the two actions and ordered briefs on the issue. Later, United Citizens filed a motion for summary judgment.

On May 2, 1988, the city clerk certified to the Board the city council's declaration of a vacancy in the office of the mayor of the City of Chicago. On May 3, the Board formally agreed to conduct a special mayoral primary election on February 28, 1989, and a mayoral general election on April 4, 1989. Subsequently, on May 6, 1988, the circuit court entered its finding and ordered:

"1. In light of the City Clerk's certification of the City Council's declaration of a vacancy, and the Chicago Board of Election Commissioners express agreement to conduct special elections on February 28, 1989 and April 4, 1989, the Coalition's Petition (No. 88 Co 118) is hereby dismissed as moot.

2. The Midwest Voter Registration and Education Project is granted leave to intervene as a defendant in No. 88 Co. 127.

3. The United Citizens' motion for summary judgment is denied; the defendants and intervening defendants' motion to dismiss is granted; and judgment is entered in favor of the defendants and intervening defendants, for the reasons set out in the Court's Memorandum Order, to be filed forthwith.

4. This order disposes of all issues and thus is final and appealable."

Kenneth Hurst and United Citizens appealed pursuant to Supreme Court Rule 302(b) (107 Ill. 2d R. 302(b)). The

motion of United Citizens to supplement its reply brief, which was taken with the case, is hereby denied.

The issue before this court is whether section 3—4—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 1—1—1 *et seq.*) requires an interim election in 1989 for mayor of the City of Chicago (Ill. Rev. Stat. 1985, ch. 24, par. 3—4—6). In order to reach a solution, this court must analyze each of the pertinent statutes within the Illinois Municipal Code and the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 1—1 *et seq.*).

The scope of article 2A of the Election Code applies to all elections for the nomination of a person for a political party and for the election of a person for public office within the State of Illinois. (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1 *et seq.*) The Election Code establishes that all such elections are to be held in accordance with the consolidated schedule of elections provided in sections 2A—1.1 and 2A—1.2. (Ill. Rev. Stat. 1985, ch. 46, pars. 2A—1(a), (b), 2A—1.1, 2A—1.2.) As defined by the Code, an election,

> "[I]ncludes the submission of all questions of public policy, propositions, and all measures submitted to popular vote, and includes primary elections when so indicated by context." Ill. Rev. Stat. 1985, ch. 46, par. 1—3(1).

A regular election includes:

> "[T]he general, general primary, nonpartisan, consolidated and consolidated primary elections regularly scheduled in article 2A." Ill. Rev. Stat. 1985, ch. 46, par. 1—3(2).

Finally, a municipal election refers to, in part:

> "[A]n election or primary, either regular or special, in cities, villages, and incorporated towns." Ill. Rev. Stat. 1985, ch. 46, par. 1—3(5).

These sections provide the following dates: (1) in appropriate odd-numbered years the consolidated primary election shall be held on the last Tuesday of February

(Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.1(b)); (2) in appropriate odd-numbered years, the consolidated election shall be held on the first Tuesday in April unless a conflict with the celebration of Passover (Ill. Rev. Stat. 1985, ch. 46, pars. 2A—1.1(a), (b)). As held in *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, special elections have been abolished in favor of interim elections pursuant to the specific requirement of the pertinent statutes, which this court will discuss later.

In a regularly scheduled consolidated primary election in appropriate odd-numbered years, "candidates of political parties shall be nominated for those offices to be filled at the consolidated election in that year." (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.2(d).) Only in appropriate odd-numbered years, the consolidated election shall fill the offices of municipal officers. Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.2(c)(1).

The Election Code not only provides for the date of an election, but also which officials are to be elected, especially for the position of mayor of the City of Chicago. Under section 2A—25, "[t]he Mayor *** of the City of Chicago shall be elected at the consolidated election in 1979 and at the consolidated election every 4 years thereafter." (Ill. Rev. Stat. 1985, ch. 46, par. 2A—25.) Thus, the next regularly scheduled election for the mayor of the City of Chicago is 1991. This court finds, however, that the Election Code does not prescribe an election in the event of a vacancy but, rather, prescribes the timing of regularly scheduled elections where the incumbent official continues in office.

When construing statutes *in pari materia*, this court's obligation is to ascertain and give effect to the legislative intent. In this case, this court must further reconcile the Election Code with the Illinois Municipal Code. It is presumed that they are:

"[G]overned by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious. [Citations.] [Furthermore], it is clear that sections *in pari materia* should be considered with reference to one another so that both sections may be given harmonious effect. [Citations.] Even when in apparent conflict, statutes, insofar as is reasonably possible, must be construed in harmony with one another. [Citations.]" (*People v. Maya* (1985), 105 Ill. 2d 281, 286-87.)

"In determining what that intent is, the court may properly consider not only the language used in a statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341.

This court has already ascertained the intent of the legislature regarding the amendments to article 2A of the Election Code and found that:

"The result of these amendments was to create a consolidated schedule of elections through the elimination of the special-election method of filling vacancies and providing for all elections to be held on one of five regular dates over a two-year cycle. [Citation.] This consolidated election scheme was enacted to lessen voter confusion, increase voter participation, and provide uniformity in elections administration. [Citation.]" (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340.)

Since the Election Code provides for uniformity in elections and supersedes other statutes on the same subjects, this court must interpret the pertinent sections of the Illinois Municipal Code to harmonize with it. At this point it is essential that this court reconcile the two codes in the event of a vacancy.

As also provided in the Election Code, the Illinois Municipal Code establishes that the office of mayor of the city of Chicago is quadrennially elected on the first Tuesday in April since 1943, except when Passover cele-

bration occurs at the same time. (Ill. Rev. Stat. 1985, ch. 24, pars. 21—5, 21—5(a).) Once a mayor of Chicago is elected, the city council shall elect from its membership a vice mayor to serve as interim mayor of Chicago in the event a vacancy occurs and only until an acting mayor is elected by the city council. (Ill. Rev. Stat. 1985, ch. 24, par. 21—5.1.) A vacancy in the office of the mayor occurs by reason of death. (Ill. Rev. Stat. 1985, ch. 24, par. 3—4—5.) The Illinois Municipal Code is even more specific about what happens in the event of such a vacancy in the office of the mayor of Chicago, in which the term of office is four years, and "there remains an unexpired portion of the term of at least 28 months, and the vacancy occurs at least 130 days before the *general municipal election* next scheduled under the general election law." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 24, par. 3—4—6.) The Municipal Code provides that the vacancy shall be filled at that general municipal election. A municipal election "means an election or primary, either regular or special ***." (Ill. Rev. Stat. 1985, ch. 46, par. 1—3(5).) A general municipal election "means the biennial regularly scheduled election for the election of officers of cities, villages and incorporated towns ***." (Ill. Rev. Stat. 1985, ch. 24, par. 1—1—2(10).) Thus, in order for the Illinois Municipal Code to be consistent with the Election Code, this court finds that a general municipal election includes interim elections to fill the vacancy of the mayor of the City of Chicago. This court also finds that the Illinois Municipal Code not only is consistent with the Election Code but also guarantees the voters' right to elect a mayor where the unexpired term exceeds 28 months. Voters do not anticipate that their choice for an elected office will vacate the office soon after being elected. In drafting the new amendments, the General Assembly recognized the voters' right and balanced it with the need for uniformity of elections and the need to

have some stability in the mayoral office or any other such elected office, and reasonably established the 28-month, 130-day limitation. No doubt the General Assembly established such a time limitation in light of the fact that elections are time-consuming and costly.

This court finds further support for its analysis regarding the scheme created by the General Assembly to fill mayoral vacancies in other statutes: for other municipal vacancies, the same time limitation is established. (Ill. Rev. Stat. 1985, ch. 24, par. 3—2—7.) For mayoral positions which are for two-year terms, this court finds that the vacancy will be temporarily filled by the city council electing one of its members as acting mayor. That vacancy will be filled at the next general municipal election. Apparently the General Assembly intended that a person appointed to fill a mayoral vacancy or any other municipal vacancy will not have more than 28 months in a four-year term to serve. The scheme recognizes the importance of the voters not to have a mayoral appointee who is not of their own choosing for more than 28 months.

This court recently addressed a similar issue in *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, and held that the city did not have an option of filling by appointment the vacancy on the city commission, which occurred at least 130 days before the next regularly scheduled general municipal election with respect to unexpired terms of at least 28 months. This court reviewed the extensive changes made to the Election Code and to the Illinois Municipal Code, especially sections 4—3—4 and 3—2—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, pars. 4—3—4, 3—2—7), and found that:

"Section 4—3—4 was amended by eliminating the special-election means of filling vacancies and substituting the requirement that interim elections be held pursuant to

section 3—2—7. *** The special-elections means of filling vacancies in municipal office was removed from section 3—2—7 and an interim election was provided for, when the balance of the unexpired term of the vacant office was longer than 28 months and the vacancy occurred at least 130 days before the next scheduled election." (*City of Springfield*, 105 Ill. 2d at 339-40.)

The determination of this court in *City of Springfield* regarding section 3—2—7 holds true for section 3—4—6.

Thus, this court finds that an interim election must be held in 1989 to fill the vacancy in the office of the mayor of the City of Chicago. Nothing in the Illinois Municipal Code is inconsistent with the Election Code. While the Election Code provides for uniformity and stability in the elected offices, the Illinois Municipal Code responds to specific and extraordinary circumstances not covered in the general scheme of elections created by the Election Code. The Illinois Municipal Code also recognizes the voting privilege in light of the economics of an election and the need for interim elections in extraordinary circumstances. For the foregoing reasons, the interim primary election to fill the mayoral vacancy shall be held on Tuesday, February 28, 1989, and the interim municipal election shall be held on Tuesday, April 4, 1989.

*Circuit court affirmed.*