# Illinois Official Reports

## Appellate Court

---

### *Hacker v. Halley*, 2021 IL App (2d) 210050

---

| | |
|---|---|
| Appellate Court Caption | SHAWN PATRICK HACKER, Plaintiff-Appellee, v. EDWARD HALLEY; THE WINFIELD TOWNSHIP OFFICERS ELECTORAL BOARD, and Its Members NICOLE PRATER, MICHAEL GUGLIELMI, and KEN MENZEL; and JEAN KACZMAREK, in Her Official Capacity as Du Page County Clerk, Defendants (Edward Halley, Defendant-Appellant).–JUDITH M. LUKAS, Plaintiff-Appellee, v. EDWARD HALLEY; THE WINFIELD TOWNSHIP OFFICERS ELECTORAL BOARD, and Its Members NICOLE PRATER, MICHAEL GUGLIELMI, and KEN MENZEL; and JEAN KACZMAREK, in Her Official Capacity as Du Page County Clerk, Defendants (Edward Halley, Defendant-Appellant).–MAURY GOODMAN, Plaintiff-Appellee, v. EDWARD HALLEY; THE WINFIELD TOWNSHIP OFFICERS ELECTORAL BOARD, and Its Members, BARBARA ALEKNA, MICHAEL GUGLIELMI, and DONALD VOELZ; and JEAN KACZMAREK, in Her Official Capacity as Du Page County Clerk, Defendants (Edward Halley, Defendant-Appellant). |
| District & No. | Second District<br>Nos. 2-21-0050, 2-21-0051, 2-21-0052 cons. |
| Filed | November 15, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 21-MR-47, 21-MR-48, 21-MR-49; the Hon. Craig R. Belford, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Brian J. Armstrong, of Luetkehans, Brady, Garner & Armstrong, LLC, of Itasca, for appellant. |
| | Ed Mullen, of Mullen Law Firm at the Westside Justice Center, of Chicago, for appellees. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Hutchinson and Hudson concur in the judgment and opinion. |

## OPINION

¶ 1    On January 8, 2021, the Winfield Township Officers Electoral Board (the board) issued orders upholding defendant Edward Halley's objection to the candidacies of plaintiffs, Maury Goodman, Judith M. Lukas, and Shawn Patrick Hacker (collectively, the candidates), for the township offices of supervisor (Goodman) and trustee (Lukas and Hacker) and striking the candidates' names from the ballots for the April 6, 2021, consolidated election. On January 11, 2021, the candidates separately petitioned for judicial review, naming Halley, the board, its members, and the Du Page County Clerk as defendants.[1] On January 25, 2021, the circuit court reversed the board's orders and ordered the candidates' names to appear on the ballot. Halley appeals. We affirm.

¶ 2                            I. BACKGROUND

¶ 3    Winfield Township is a township organized under the Township Code (60 ILCS 1/1-1 *et seq.* (West 2020)). By law, the voters within the township elect at the consolidated election (see *id.* § 5-65; 10 ILCS 5/2A-33 (West 2020)), *inter alia*, a township supervisor and four trustees who serve four-year terms. 60 ILCS 1/50-5(b), 50-40 (West 2020). To qualify for elected township office, a person must be a legal voter, reside in the township for at least one year before his or her election, and cannot have any convictions for infamous crimes, bribery, perjury, or another felony at the time he or she takes the oath of office. *Id.* § 55-5, 55-6. Generally, the Election Code (10 ILCS 5/1-1 *et seq.* (West 2020)) applies to the conduct of all township elections. 60 ILCS 1/50-45 (West 2020); see also *id.* § 45-20(c).

_____

[1]By law, the members of the board include the township supervisor, the township clerk, and the most senior trustee. 10 ILCS 5/10-9(4) (West 2020). However, when the board must pass on an objection to a nominee for township supervisor, the second most senior trustee replaces the supervisor on the board and acts as chair. *Id.* § 10-9(c). Accordingly, Barbara Alekna replaced Nicole Prater on the board when it considered Halley's objection to Goodman's candidacy.

¶ 4 Article 45 of the Township Code governs *nominations* for elected township office. Section 45-5 provides that, "[i]n all townships \*\*\*, nominations by established political parties for candidates for township officers shall \*\*\* be held *as provided in this Article*." (Emphasis added.) *Id.* § 45-5. Established political parties in townships hold caucuses to nominate candidates for township office unless the party, in a township exceeding a certain population threshold, has chosen to hold primary elections under article 7 of the Election Code. *Id.* §§ 45-10, 45-55; see 10 ILCS 5/art. 7 (West 2020). Additionally, "[c]ertain candidates for township offices may be nominated as provided in Article 10 of the Election Code." 60 ILCS 1/45-60 (West 2020). The Democratic Party in Winfield Township, which the parties do not dispute is an established political party as that term is defined in the Election Code and used in the Township Code, nominates its candidates for township office at a caucus.

¶ 5 Article 45 of the Township Code sets forth certain notice and procedural requirements relating to the conduct of township caucuses and provides that an established political party may adopt additional procedural rules by a majority vote of qualified participants. See *id.* §§ 45-10, 45-50. It also prescribes how nominated candidates' names are to be placed on the ballot: not more than 113 nor less than 106 days before the township election, the chairperson of the township central committee must file with the township clerk the nominated candidates' nomination papers. *Id.* § 45-20(b). The required nomination papers include (1) a "certification by the chair[person]," which provides the names of all candidates for office in the township nominated at the caucus, and (2) a "statement of candidacy," prepared by the candidate, which complies with the form prescribed in section 10-5 of the Election Code. *Id.*; see also 10 ILCS 5/10-5 (West 2020). Each nominated candidate must also file with the township clerk a receipt from the county clerk showing he or she filed a statement of economic interests as required by the Illinois Governmental Ethics Act (Ethics Act) (5 ILCS 420/1-101 *et seq.* (West 2020)). 60 ILCS 1/45-30 (West 2020). Finally, the township clerk must certify the candidates nominated at the caucus to the proper election authorities not less than 68 days before the township election. *Id.* § 45-20(c).

¶ 6 On December 1, 2020, the Winfield Township Democratic Party held a caucus and selected Goodman as its nominee for the office of Winfield Township supervisor and Lukas and Hacker as its nominees for the office of Winfield Township trustee in the April 2021 consolidated election. On December 14, 2020, the chairperson of the Democratic Party's township central committee, Lynn Maher, filed with the township clerk the candidates' nomination papers, which included a "certificate of nomination by caucus" (filed in duplicate for each candidate), receipts showing the candidates had filed statements of economic interests, and the candidates' statements of candidacy.

¶ 7 The certificate of nomination by caucus was completed on a preprinted form made available by the Illinois State Board of Elections. See Ill. State Bd. of Elections, Certificate of Nomination by Caucus, https://www.elections.il.gov/agencyforms/4%20CAUCUS%20 MATERIALS/Certificate%20of%20Nomination%20by%20Caucus%20H-2.pdf (last visited Nov. 3, 2021) [https://perma.cc/TF3K-GD6A]. In the top left corner of the form, there is reference to sections 7-10.2, 10-1, 10-5, and 10-5.1 of the Election Code (10 ILCS 5/7-10.2, 10-1, 10-5, 10-5.1 (West 2020)) but not section 45-20 of the Township Code (60 ILCS 1/45-20 (West 2020)). The certificate of nomination, as completed on the form, states, "We, the undersigned, do hereby certify that on [December 1, 2020,] at a caucus of the Democratic PARTY in the Township of Winfield in Du Page County, Illinois, the following nominations

were made for the respective offices herein designated, to be voted for at the Consolidated Election to be held on [April 6, 2021]." The certificate lists the candidates' names, their addresses, and the offices for which they were nominated. It also states, "We also certify that at the last candidate election in this political subdivision aforesaid, the Democratic PARTY polled more than 5% of the entire vote cast." The certificate was signed by Maher and Sheila Rutledge, who had acted as secretary of the caucus.

¶ 8        On the bottom of the form, under Maher's and Rutledge's signatures, there is fillable, preprinted language in which a person "authorized to administer oaths in Illinois" can sign his or her name, thereby attesting "[t]he persons whose names are subscribed to the *** certificate personally appeared before me on [a date certain] and upon their oaths stated that the same is true and correct to the best of their knowledge." This portion of the certificate of nomination was not completed.

¶ 9        The candidates' statements of candidacy were also completed on a preprinted form. See Ill. State Bd. of Elections, Statement of Candidacy, https://www.elections.il.gov/agencyforms/ 3%20Statement%20of%20Candidacy%20Forms/Statement%20of%20Candidacy%20 (Nomination%20by%20Caucus)%20P-1K.pdf (last visited Nov. 3, 2021) [https://perma.cc/ ZLK9-B79A]; see also 10 ILCS 5/10-5 (West 2020) (setting forth the information a nominated candidate must provide in the statement of candidacy, requiring the statement to be subscribed and sworn to in front of a person authorized "to take acknowledgements of deeds," and prescribing form language that may be used by a candidate). In their statements, each candidate listed his or her name, party, district, address, and the office he or she was seeking. Each candidate, after being sworn, also requested his or her name be placed on the ballot and stated he or she resided at the address listed; was a qualified voter in the township and a qualified primary voter of the Democratic Party; was seeking the office listed on the form; was "duly nominated at said party's caucus"; was legally qualified to hold the office sought; and had filed a statement of economic interests as required by the Ethics Act. Each candidate signed his or her statement of candidacy before a notary public.

¶ 10       On December 28, 2020, Halley objected to the candidacies of the candidates and asked that their names be stricken from the ballot. See 10 ILCS 5/10-8 (West 2020). Halley raised the same argument as to each candidate, asserting the candidates' nomination papers were insufficient in law and fact because Maher's and Rutledge's signatures on the certificate of nomination were not sworn. He contended "[t]his omission fail[ed] to comply with the requirements applicable to Certificates of Nomination as set forth in the Election Code and the required procedures to certify the nomination of candidates by caucus" and rendered the certificate invalid. Halley generally asserted the omission "create[d] confusion among the voters as to whether [the candidates were] in fact nominated at the caucus and *** eligible to run for the office[s sought]." Halley did not affirmatively allege any fraud or impropriety concerning how the caucus was conducted, that the candidates were not qualified to hold office, or that some other candidates had been nominated at the caucus.

¶ 11       In their written submissions to the board, the candidates noted, as an initial matter, that ballot access is a substantial right not lightly to be denied (see *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992)) and that removing their names from the ballot would leave the township's voters without any Democratic candidates on the ballot, thus disenfranchising anyone who wished to vote for a Democrat. They argued Halley's objections to their candidacies should be overruled because the governing statute, article 45 of the Township Code (60 ILCS 1/art. 45 (West

- 4 -

2020)), did not require the certificate filed by Maher to be sworn. They noted that, though some provisions of the Election Code expressly required a certificate to be sworn, the applicable provision of the Township Code, section 45-20(b) (*id.* § 45-20(b)), did not mandate the "certification" required under that section to be sworn. Further, they argued that, under section 10-10 of the Election Code (10 ILCS 5/10-10 (West 2020)), the board's determination was limited to "whether the certificate of nomination in question represent[ed] accurately the decision of the caucus, and whether it should be deemed valid." They asserted the board could call on Maher or Rutledge to establish the validity of the certificate and the decision of the caucus and that Halley had challenged only the validity of the certificate, not the validity of the nominations themselves. They maintained that, even if the certificate was required to be sworn, the requirement was directory, not mandatory.

¶ 12    In his written submissions, Halley argued section 10-1 of the Election Code (*id.* § 10-1) governs certificates of nomination and requires such certificates to be signed under oath by the presiding officer and secretary of the caucus. Halley relied, in large part, on *Moon v. Rolson*, 189 Ill. App. 3d 262, 266 (1989), a case involving objections to nominations for township office, wherein the court stated, "section 10-1 of the Election Code requires the presiding officer and secretary of the caucus to certify nomination papers under oath." Based on this statement in *Moon*, Halley argued the sworn certificate requirement of section 10-1 applied to nominations made under article 45 of the Township Code. Halley contended the failure to sign the certificate under oath rendered the certificates fatally defective because "affidavits such as those required by Section 10-1 are a substantial and valid requirement that relates to the integrity of the political process."

¶ 13    On January 8, 2021, after a hearing, the board issued orders in which it upheld Halley's objections and ordered the candidates' names to be stricken from the ballot. The board found section 10-1 of the Election Code was applicable and "required the officers signing the [c]ertificate swear that the information on it is true and correct." In finding section 10-1 was applicable, the board noted the form used by the candidates contained a preprinted notarization section. It found section 10-2 of the Election Code (10 ILCS 5/10-2 (West 2020)) "ma[de] clear that Article 10 applies to established parties notwithstanding the narrow reference in Section 10-1 concerning the making of nominations by non-established parties." The board reasoned "[t]here [wa]s no basis in the language of the section to exempt established political parties from the swearing requirement, especially when Article 10 is read in its entirety" and that there would not be "a logical purpose for such an imagined distinction between established and non-established political parties," requiring some political parties to sign the certificate under oath and others not. Further, according to the board, no provision in either the Township Code or Election Code gave exclusive authority over the certification process to the Township Code; rather, the Election Code superseded the Township Code. Additionally, regarding the candidates' assertion that the board need only determine whether the certificate in question "accurately represent[ed] the caucus'[s] decision, and whether it should be deemed valid," the board concluded it could not make that determination, because the officers' signatures were not sworn and the candidates had offered no evidence that they were, in fact, nominated. Finally, the board found that, if it were to accept the candidates' argument that public policy favors ballot access and that removing candidates from the ballot runs contrary to that policy, then no candidate would ever be removed from the ballot, there would be no reason for the

specific procedural requirements in the Election Code, and "the integrity of the electoral process would be compromised if not surrendered entirely."

¶ 14 On January 11, 2021, the candidates separately petitioned for judicial review under section 10-10.1 of the Election Code (*id.* § 10-10.1). At the initial status hearing, the court noted the complaints presented identical issues, but due to time constraints, it was unable to formally consolidate the cases. The court nevertheless ordered the parties to submit a joint memorandum for all three cases. The parties filed memoranda in support of their positions, and on January 25, 2021, after a hearing, the court reversed the board's decision. In its written order, incorporated by reference in each case, the court found section 10-1 of the Election Code applied and required the certificate of nomination to be signed under oath. Though the court expressed doubt as to the applicability of section 10-1, it concluded it was bound by *Moon*, which "declared in the absence of any analysis that 'section 10-1 of the Election Code require[d]' that the nominating certificates mandated by section 45-20 be signed 'under oath.' " The court nevertheless determined the oath requirement of section 10-1 was directory, not mandatory, and as a result, the omission of a sworn signature on the certificate of nomination did not require the candidates' names be stricken from the ballot.

¶ 15 On February 9, 2021, Halley filed a notice of appeal in each case and, the next day filed a motion to consolidate the appeals and hear the case on an expedited basis under Illinois Supreme Court Rule 311(b) (eff. July 1, 2018). A different panel of this court granted Halley's request to consolidate the appeals but, citing *Lenehan v. Township Officers Electoral Board*, 2013 IL App (1st) 130619, ¶ 19, denied his request to expedite the resolution of the appeal.

¶ 16                                II. ANALYSIS

¶ 17 In this appeal, we must determine whether the board correctly concluded section 10-1 of the Election Code applies to nominations made by established political parties under article 45 of the Township Code. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008) (appellate court reviews electoral board's decision, not the circuit court's). If section 10-1 applies, the next question is whether the absence of sworn signatures on the certificate filed by Maher was fatal to the candidates' nominations.

¶ 18 For the following reasons, we conclude section 10-1 of the Election Code does not apply to nominations made by established political parties under article 45 of the Township Code. Indeed, section 10-1 of the Election Code specifically excludes from its purview such nominations, and article 45 of the Township Code expressly provides that nominations for township office must be made as provided in that article. Accordingly, we affirm the circuit court's judgment but on different grounds.

¶ 19                             A. Standard of Review

¶ 20 This case presents an issue of statutory construction, which is a question of law subject to *de novo* review. *In re Marriage of Peterson*, 2011 IL 110984, ¶ 9. Our primary objective in construing a statute is to ascertain and effectuate the legislature's intent. *Id.* ¶ 15. The best indication of legislative intent is the statute's language, which we apply as written, giving the words used their plain and ordinary meaning. *Id.*

¶ 21 When construing a statute, a court may not read the language in isolation; rather, it must consider the language in the context of the entire statute and any other applicable provisions.

*Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. We may not construe a statute in a way that renders any part of it meaningless, inoperative, superfluous, or insignificant. *Van Dyke v. White*, 2019 IL 121452, ¶ 46. Rather, we must give effect to each word, clause, and sentence, if possible. *Id.* Further, when two or more statutes relate to the same subject matter, we must construe them regarding each other to give effect to the provisions of each statute, while keeping in mind "specific statutory provisions *** control over general provisions on the same subject." *Id.*

¶ 22                                    B. Nominations for Township Office

¶ 23    This case involves the nomination of candidates for township office. Section 45-5 of the Township Code provides that, "[i]n all townships ***, nominations by established political parties for candidates for township officers shall *** be held *as provided in this Article*." (Emphasis added.) 60 ILCS 1/45-5 (West 2020). However, established political parties in townships with a population of 15,000 or more in counties with a population of less than 3 million may choose to hold a primary election under article 7 of the Election Code to nominate their candidates. *Id.* § 45-55; see 10 ILCS 5/art. 7 (West 2020). Additionally, "[c]ertain candidates for township offices may be nominated as provided in Article 10 of the Election Code." 60 ILCS 1/45-60 (West 2020). Thus, article 45, by its plain terms, is the *exclusive* means for established political parties to nominate their candidates for township office, except in two circumstances: (1) when the party in a township meeting the population threshold chooses to nominate its candidates at a primary election, which is governed by article 7 of the Election Code (see 10 ILCS 5/7 (West 2020)), and (2) when "certain candidates" for township office are nominated as provided in article 10 of the Election Code. Indeed, the legislature clearly stated its intent: such nominations must be made "as provided in *** [article 45]." 60 ILCS 1/45-5 (West 2020).

¶ 24    We next turn to section 45-20 of the Township Code, which, as noted, sets forth the procedure for filing the nomination papers of the candidates who were nominated at the established political party's township caucus and having their names placed on the ballot. It states as follows:

> "(a) The township central committee shall canvass and declare the result of the caucus.

> (b) The chairman of the township central committee shall, not more than 113 nor less than 106 days before the township election, file nomination papers *as provided in this Section*. The nomination papers shall consist of (i) a certification by the chairman of the names of all candidates for office in the township nominated at the caucus and (ii) a statement of candidacy by each candidate in the form prescribed in the general election law. The nomination papers shall be filed in the office of the township clerk ***.

> (c) The township clerk shall certify the candidates so nominated to the proper election authorities not less than 68 days before the township election. The election shall be conducted in accordance with the general election law." (Emphasis added.) *Id.* § 45-20.

Section 45-20, by its plain terms, likewise provides it is the *exclusive* means under which the candidates nominated at a township caucus are to file their nomination papers—they must be filed "as provided in *** Section [45-20]." *Id.* Section 45-20 imposes the following

requirements as to such nominations: (1) the township central committee must canvass and declare the result of the caucus; (2) the township central committee chairperson must file the candidates' nomination papers not more than 113 nor less than 106 days before the township election; and (3) proper nomination papers for such nominations consist *only* of (a) a "certification by the chair[person] of the names of all candidates for office in the township nominated at the caucus" and (b) a statement of candidacy, prepared by the nominated candidate, which complies with the form prescribed in section 10-5 of the Election Code. *Id.* § 45-20(b); see 10 ILCS 5/10-5 (West 2020). (The candidate must also file a receipt showing he or she has filed a statement of economic interests as required by the Ethics Act, though that need not be filed contemporaneously with the nomination papers. 60 ILCS 1/45-30 (West 2020).)

¶ 25    Here, the parties do not dispute Maher filed the candidates' nomination papers within the applicable timeframe or that the candidates each filed a proper statement of candidacy and a proper statement of economic interests. Rather, the parties' dispute centers solely on whether Maher prepared and filed a proper "certification" under section 45-20(b) where she and Rutledge did not sign the document under oath.

¶ 26    On this point, Halley contends, and the board concluded, section 10-1 of the Election Code applies to *all* certificates of nomination filed on behalf of candidates who were nominated at a caucus, regardless of whether the candidate is running for a township office or some other office, thus requiring the "certificate" referred to in section 45-20 to be signed under oath. Accordingly, we turn to the text of section 10-1 and other relevant provisions of the Election Code.

¶ 27                          C. Section 10-1 of the Election Code
¶ 28    Section 10-1 states, in part, as follows:

"Sec. 10-1. Application of Article to minor political parties.

(a) Political parties as defined in this Article and individual voters to the number and in the manner specified in this Article may nominate candidates for public offices whose names shall be placed on the ballot to be furnished, as provided in this Article. *No nominations may be made under this Article 10, however, by any established political party which, at the general election next preceding, polled more than 5% of the entire vote cast in the State, district, or unit of local government for which the nomination is made. Those nominations provided for in Section 45-5 of the Township Code shall be made as prescribed in Sections 45-10 through 45-45 of that Code for nominations by established political parties, but minor political parties and individual voters are governed by this Article. Any convention, caucus, or meeting of qualified voters of any established political party as defined in this Article may, however, make one nomination for each office therein to be filled at any election for officers of a municipality with a population of less than 5,000 by causing a certificate of nomination to be filed with the municipal clerk no earlier than 113 and no later than 106 days before the election at which the nominated candidates are to be on the ballot. The municipal caucuses shall be conducted on the first Monday in December of even-numbered years, except that, when that Monday is a holiday or the eve of a holiday, the caucuses shall be held on the next business day following the holiday.* Every certificate of nomination shall state the facts required in Section 10-5 of this Article

and shall be signed by the presiding officer and by the secretary of the convention, caucus, or meeting, who shall add to their signatures their places of residence. The certificates shall be sworn to by them to be true to the best of their knowledge and belief, and a certificate of the oath shall be annexed to the certificate of nomination." (Emphasis added.) 10 ILCS 5/10-1(a) (West 2020).

¶ 29 Halley focuses on the unemphasized language in the above passage, which states a "political party" as defined in article 10 "may nominate candidates for public office" as provided in article 10, that "[e]very certificate of nomination" must state the facts required in section 10-5, and that such certificates must be signed under oath by the presiding officer and secretary of the caucus. *Id.* He notes section 10-2 defines "political party," in part, as an "established political party," *i.e.*, one that, in the last general election for state and county officers, received for its candidate for Governor more than 5% of the total vote cast. See *id.* § 10-2. He contends, therefore, the language of sections 10-1(a) and 10-2 establishes that the Democratic Party here was permitted to nominate candidates for public office as provided in article 10. As a result, Maher and Rutledge were required to sign under oath the certificate of nomination filed on behalf of the candidates in accordance with section 10-1(a) of the Election Code. We disagree.

¶ 30 To accept Halley's construction of 10-1(a) would require us to read the provisions on which he relies in isolation, without giving effect to the remaining text of that section and other applicable provisions of the statutory scheme at issue here. This we cannot do. *Slepicka*, 2014 IL 116927, ¶ 14.

¶ 31 The remainder of section 10-1(a) evidences the legislature's intent to limit the scope of article 10 and specifically exclude from its purview nominations for township office made by established political parties under article 45 of the Township Code. Indeed, the emphasized language set forth above makes it clear that established political parties may nominate candidates under article 10 in one circumstance: when a convention, caucus, or meeting of qualified voters of an established political party nominates candidates for *municipal* office in a *municipality* with a population under 5000. See 10 ILCS 5/10-1(a) (West 2020); see also *id.* § 1-3(5), (7) (defining "township" as distinct from "municipality"). Otherwise, "*[n]o nomination may be made under *** Article 10 *** by any established political party*." (Emphasis added.) *Id.* § 10-1(a). And if the legislature's declaration that no nomination may be made under article 10 by any established political party except in that limited circumstance was not a sufficiently clear declaration of its intent to exclude township officer nominations by established political parties from article 10's purview, section 10-1 also specifically states that nominations for township office made by established political parties "*shall be made as prescribed in Sections 45-10 through 45-45 of [the Township] Code, *** but minor political parties and individual voters are governed by this Article.*" (Emphasis added.) *Id.* In light of these clear limitations as to the applicability of article 10 of the Election Code, we conclude section 10-1 does not apply to nominations for township office made, as here, by established political parties under the caucus procedures of article 45 of the Township Code.

¶ 32 Further, we note the remaining subsections of section 10-1 set forth the nomination procedures applicable when an established political party chooses to nominate its candidates for municipal office as provided in article 10. In such cases, the remainder of section 10-1 sets forth (1) the time for holding such *municipal* caucuses (*id.* § 10-1(a)); (2) the procedure for filing a "certificate of nomination," including a requirement that such certificates contain the

information in section 10-5 and be signed under oath by the presiding officer and secretary of the caucus (*id.*); (3) certain public notice requirements (*id.* § 10-1(b)); (4) that certain *municipalities* may adopt a nonpartisan system for selecting its officers (*id.* § 10-1(c)); (5) that certain *municipalities* may determine that established political parties shall nominate candidates for *municipal* office at primary elections under article 7 of the Election Code (*id.* § 10-1(d)); and (6) who may participate in a caucus held under section 10-1 (*id.* § 10-1(e)).

¶ 33    Halley argues section 10-1 does not contain any language limiting its applicability only to nominations made under article 10. He notes that section 10-1(a) states "*[e]very* certificate of nomination" shall state certain facts and be signed by the presiding officer and secretary of the caucus under oath. (Emphasis added.) *Id.* § 10-1(a). He argues that any contrary construction of section 10-1(a) would "rewrite the statute or insert language that does not appear in the statute." We disagree.

¶ 34    Section 10-1(a) already contains clear limiting language, as set forth above. We need not read any language into the statute to limit its application to nominations made by established political parties for municipal office in municipalities with a population under 5000. Halley's proposed construction of section 10-1(a) would read *out* of the statute the language clearly limiting its application only to nominations made by established political parties for municipal office in certain municipalities. We cannot ignore such a clear statement of the legislature's intent by reading language out of the statute. See *Van Dyke*, 2019 IL 121452, ¶ 46.

¶ 35    In support of our conclusion, we note article 7 of the Election Code (10 ILCS 5/art. 7 (West 2020)) applies to the making of nominations by established political parties. Section 7-1(a) of the Election Code provides that political parties, as that term is defined in section 7-2, generally must nominate their candidates as "provided in *** Article 7 and not otherwise."[2] *Id.* § 7-1(a). Section 7-1(b), however, specifically excludes from article 7's application (1) nominations of candidates for township elections, unless the party opts to hold a primary election, and (2) nominations of municipal officers for municipalities with a population of 5000 or less, unless the municipality has opted to hold primary elections. *Id.* § 7-1(b); see 60 ILCS 1/45-55 (West 2020) (permitting established political party to hold primary election to nominate candidates); 10 ILCS 5/10-1(d) (West 2020) (same).

¶ 36    Article 10 of the Election Code (10 ILCS 5/art. 10 (West 2020)), on the other hand, governs the making of nominations in certain other cases. Sections 10-1, 10-2, 10-3, and 10-3.1 set forth what "certain other cases" are governed by the article: (1) nominations for municipal office in municipalities with populations less than 5000 made by established political parties (*id.* § 10-1), which may be made at a caucus held under the remainder of section 10-1, and (2) nominations by new political parties (*id.* § 10-2), of independent candidates (*id.* § 10-3), and of nonpartisan candidates (*id.* § 10-3.1), which are made by petition following those sections. Simply put, the nominations at issue here were made under article 45 of the Township Code and, therefore, were plainly excluded from the scope of article 10. Thus, we conclude Maher's certificate was not required to comply with section 10-1. Rather, the candidates' nomination papers were required to comply with only section 45-20 of the Township Code.

¶ 37    As noted, the board found the appellate court's decision in *Moon* dictates a contrary construction of section 10-1(a), a position Halley urged below and echoes on appeal. In *Moon*,

_____

[2]Section 7-2 of the Election Code defines a "political party" as one which, at the next election then preceding the primary, polled more than 5% of the total vote cast. 10 ILCS 5/7-2 (West 2020).

the plaintiff objected to the candidacies of nine candidates for township office who were selected at a caucus, asserting the candidates' nomination papers were insufficient because they had not been certified by the township central committee chairperson. *Moon*, 189 Ill. App. 3d at 263. Just before the caucus, the chairperson was hospitalized and, therefore, appointed a replacement to chair the caucus on his behalf. *Id.* at 263-64. After the caucus was completed, the replacement, acting as committeeman and the secretary of the caucus, certified the nominations by signing the certificates of nomination and filing them with the township clerk. *Id.* at 264. The board denied the objections, and the circuit court affirmed the board's decision.

¶ 38     Before the appellate court, the issue was whether "the certificates of nomination by caucus were properly signed by the chairman of the [township central committee]." *Id.* The court examined the language of section 10-1 of the Election Code and the predecessor to section 45-20 of the Township Code. After noting the Election Code "supersede[d] other statutes with regard to election procedures," the court stated, "section 10-1 of the Election Code require[d] the presiding officer and secretary of the caucus to certify nomination papers under oath." *Id.* at 266. The court concluded the nomination papers were valid and affirmed the board's decision because "[t]he nomination papers *** satisfied that statutory requirement" and substantially complied with the predecessor to section 45-20 of the Township Code. *Id.*

¶ 39     As the circuit court noted in this case, it is not clear how *Moon* came to this conclusion in light of the plain text of section 10-1(a). A meticulous reading of the statutes at issue, as set forth above, shows section 10-1 is inapplicable to nominations made by established political parties for township office. Rather, section 10-1 applies when an established political party chooses to nominate its candidates for *municipal office* in municipalities with a population less than 5000 under the provisions of article 10. 10 ILCS 5/10-1 (West 2020). Otherwise, article 45 of the Township Code prescribes the exclusive means under which an established political party may nominate candidates for township office, and article 10 governs how new political parties, minor political parties, independent candidates, and nonpartisan candidates access the ballot for township office. Further, *Moon* is devoid of any discussion of the broader statutory scheme at issue, and, indeed, it omits entirely from its discussion the clear limiting language of section 10-1(a). In other words, *Moon* appears to have done what the rules of statutory construction prohibit—it construed the language in isolation without regard to the remainder of the statute at issue or the broader statutory scheme. See *Slepicka*, 2014 IL 116927, ¶ 14.

¶ 40     Additionally, we note that, while the *Moon* court stated section 10-1 applied to nominations for township office by established political parties, it also found the nomination papers at issue substantially complied with the predecessor to section 45-20 of the Township Code. *Moon*, 189 Ill. App. 3d at 266. That the *Moon* court found the nomination papers substantially complied with the predecessor to section 45-20 of the Township Code is significant. There would be no reason to make that remark if section 45-20 was inapplicable. Further, we note *Moon* came before the court on a relatively unique set of facts. (We say "relatively unique" because similar factual circumstances were present in *Lenehan*, 2013 IL App (1st) 130619, discussed below.) In *Moon*, the township central committee could not comply with section 45-20 of the Code at the time it filed the candidates' nominations because the appointed township central committee chairperson was incapacitated and no duly elected or appointed replacement had been selected. Thus, in *Moon*, the court was confronted with a hole in the statutory scheme: an established political party in a township had nominated candidates for township office at a caucus but there was no duly elected or appointed township central committee chairperson to

- 11 -

prepare the certificate required by section 45-20 of the Township Code. Under the circumstances present in *Moon*, we do not disagree that it was proper to look to the Election Code to fill in that gap.

¶ 41    *Lenehan* involved facts "uncannily similar" to those in *Moon*. *Id.* ¶ 51. There, the township central committee chairperson resigned and purportedly assigned his duties to another person, who was, on the day before the caucus, voted to replace the chairperson by the "Schaumburg Area Democrats." The appellate court ultimately found the party's failure to strictly comply with section 45-20 of the Township Code was of no consequence when there was no evidence, or even an allegation, of fraud or an incorrect determination of the caucus result. *Id.* ¶ 58. In reaching this determination, the court, relying on *Moon*, "specifically note[d] that section 10-1 of the Election Code [citation] allows the certificate of nomination to be signed by the 'presiding officer' of the caucus, leading to the conclusion that, *depending on the underlying facts*, someone other than the committeeman might validly sign the certificate." (Emphasis added.) *Id.* ¶ 52. Thus, *Lenehan* merely noted that, in limited circumstances, *i.e.*, when there is no duly elected or appointed township central committee chairperson, section 10-1 can provide a means under which the established political party can certify its caucus results to the township clerk.

¶ 42    In any event, we, unlike the circuit court, are not bound to follow *Moon* and *Lenehan*. *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 22. To the extent *Moon* and *Lenehan* definitively held section 10-1 applies to the "certification" required to be filed under section 45-20 of the Township Code except in the limited circumstances present in those cases, we decline to follow those decisions. Indeed, the plain language of the applicable statutes, which is controlling (see *Peterson*, 2011 IL 110984, ¶ 15), compels the opposite conclusion: section 10-1 does not apply to the certificate at issue here.

¶ 43    We note Halley attempts to avoid the plain language limiting the application of section 10-1, as set forth above, relying on *Moon* and *Lenehan*. He argues, "[n]either the language in Section 10-1 regarding the applicability of the Township Code nor Section 45-20 of the Township Code vitiates *Moon or Lenehan*." He notes the same statutory language was present when *Moon* was decided, "yet the [*Moon*] court did not find it relevant enough to mention, let alone impact its decision that the Township Code is not the exclusive authority on whether a certificate of nomination by caucus has been validly executed." That is precisely the problem with *Moon*—it did not place the portion of section 10-1 that it relied on in its proper statutory context. It omitted the clear limiting language from its discussion entirely. The plain language of the relevant statutes establishes that section 10-1 of the Election Code is inapplicable to nominations made by established political parties under article 45 of the Township Code and requires us to depart from *Moon* and *Lenehan* to the extent their holdings are inconsistent with a plain reading of the statute. See *People v. Clark*, 2019 IL 122891, ¶ 47 (noting a court may not " 'declare that the legislature did not mean what the plain language of the statute imports' " (quoting *People v. Smith*, 2016 IL 119659, ¶ 18)).

¶ 44    Halley also argues section 10-1 of the Election Code applies here because the Election Code supersedes other statutes on election procedures. In support, he relies on *Moon*, which, in turn, relied on *United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989*, 125 Ill. 2d 332, 339 (1988).

¶ 45    Admittedly, this is what *United Citizens* and *Moon* said. But the statement in *United Citizens* was made immediately after the court recognized it must construe statutes *in pari materia* (that is, on the same general subject) with reference to each other:

> "It is presumed [statutes *in pari materia*] are:
>
> > '[G]overned by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious. [Citations.] [Furthermore], it is clear that sections *in pari materia* should be considered with reference to one another so that both sections may be given harmonious effect. [Citations.] Even when in apparent conflict, statutes, insofar as is reasonably possible, must be construed in harmony with one another.' " *United Citizens*, 125 Ill. 2d at 339 (quoting *People v. Maya*, 105 Ill. 2d 281, 286-87 (1985)).

¶ 46    We agree article 45 of the Township Code and article 10 of the Election Code are statutes relating to the same general subject—nominations and elections for township office. But the statutes at issue are not in conflict, and so the Election Code need not supersede the Township Code here. Indeed, it is possible to read the statutes in harmony, giving effect to each and rendering neither superfluous. Article 45 provides a special procedure under which established political parties may nominate candidates for township office by caucus, and section 10-1 provides a special procedure under which established political parties may nominate candidates for municipal office in certain municipalities. Otherwise, article 7 of the Election Code governs nominations for office by established political parties, and article 10 governs nominations for office by new and minor political and independent and nonpartisan candidates.

¶ 47    Relatedly, Halley argues,

> "The only way to read the statutes harmoniously is to read the Township Code as addressing the caucus procedures and nomination procedures, and to read the Election Code (and Section 10-1 in particular) as addressing the requirements to validly execute nominating papers, including a certificate of nomination by caucus."

He maintains that to construe the statutes otherwise would read out of the statute section 10-1's requirement that a certificate of nomination be sworn and render the requirement superfluous. We disagree.

¶ 48    Section 45-20 specifically states what a candidates' nomination papers consist of in the context of nominations for township office. Section 10-1, on the other hand, states what a candidates' nomination papers consist of in the context of nominations for municipal office in municipalities with a population under 5000. Halley's proposed construction would render the language relating to nomination papers in section 45-20 of the Township Code superfluous, as there would be no need for that language if section 10-1 of the Election Code addressed the requirements to validly execute nominating papers for established political party candidates who were nominated at caucuses for township office.

¶ 49    Halley also argues the board's construction of section 10-1 was correct because any other construction would lead to the absurd result that established political parties need not submit sworn certificates of nomination for township office but nonestablished political parties do. We note Halley's argument is based on a flawed reading of the relevant statutes. Section 10-1 of the Election Code applies to an established political party's nomination by caucus for municipal office in certain municipalities and sets forth the procedures applicable to such a caucus, including that the party file a certificate of nomination that contains certain information

and is signed under oath. Sections 10-2, 10-3, and 10-3.1 apply to new and minor (as opposed to established) political parties, independent candidates, and nonpartisan candidates and provides that those parties or candidates may nominate candidates by petition. Thus, under this statutory scheme, the language of the statute treats established political parties differently than new political parties, independent candidates, and nonpartisan candidates, in the following respect. An established political party may nominate by caucus a candidate for township office and, under section 45-20 of the Township Code, the chairperson need only file a "certification" stating the names of the candidates selected for office. [3] In certain municipalities, an established political party may nominate candidates for municipal office under section 10-1 of the Election Code, in which case the party must submit a sworn "certificate of nomination" containing certain information. But new political parties, independent candidates, and nonpartisan candidates seeking access to those same ballots must circulate a petition that must contain a certain number of signatures and comply with strict procedural requirements, including a requirement that the circulator attest to certain information under oath. See 10 ILCS 5/10-2, 10-3, 10-3.1, 10-4 (West 2020) (setting forth minimum and maximum signature requirements and procedural requirements for nominations made by new political parties, independent candidates, and nonpartisan candidates). Thus, section 45-20 of the Township Code treats established political parties that are nominating candidates for township office differently from those that are nominating candidates for municipal office in certain municipalities under section 10-1 of the Election Code. And under article 10, new political parties, independent candidates, and nonpartisan candidates are all treated differently than established political parties, regardless of the office those candidates are seeking.

¶ 50   In any event, we recognize the current scheme for nominating candidates for township office may treat established political parties differently than others seeking ballot access for township office. The parties dispute whether there is a valid reason for this purported disparate treatment. The candidates argue that, because township central committee chairs are elected (see *id.* § 7-8(b); 60 ILCS 1/45-15 (West 2020)), they owe a fiduciary duty to their constituents, unlike a circulator of a nominating petition, who has no such duty or legal status. See *Village of Wheeling v. Stavros*, 89 Ill. App. 3d 450, 453 (1980) (noting public officials are trustees with a fiduciary duty to the people and owe to their principals the "duties of absolute loyalty and fidelity, and occup[y] a position of the highest public trust"). This duty, the candidates argue, "protects the integrity of the nomination process without need for a swearing under oath." In response, Halley notes that a township central committee chairperson "serve[s] only their own political party" and is "not accountable to the electorate [as a whole]." Regardless of whether this purported justification for disparately treating established political parties holds any water, the simple fact remains that the legislature has clearly stated its intent to treat established political parties differently than others seeking ballot access. To the extent Halley contends such a distinction is improper, relief may be sought through a change to the applicable statutory scheme.

¶ 51   Finally, we briefly address, and reject, Halley's argument that the inclusion of the preprinted language on the certificate of nomination by caucus form used by Maher shows the

[3]We note the candidate fills in any gaps in the legitimacy of his or her nomination by filing a statement of candidacy, which must be sworn and state he or she is a qualified candidate and was actually nominated. See 60 ILCS 1/45-20(b) (West 2020); 10 ILCS 5/10-5 (West 2020).

Illinois State Board of Elections "interprets the applicable law to require the officers' statements [in the certificate] be sworn." However, the "Township Caucus Guide for 2021," issued by the Illinois State Board of Elections, does not state the certificate must be sworn. We also note the form used by Maher contains specific references to certain provisions of the Election Code but contains no reference to the Township Code. As the board noted, neither document can be afforded more weight than the other, and the Illinois State Board of Elections' position is, at best, ambiguous.

¶ 52                      D. Did Maher File a Proper "Certificate" Under
                              Section 45-20 of the Township Code?

¶ 53    Having concluded section 10-1 is inapplicable to nominations for township office made, as here, by established political parties under article 45 of the Township Code, we must next determine whether Maher filed a proper "certification" as that term is used in section 45-20. Again, in relevant part, section 45-20 of the Township Code requires the chairperson of the township central committee to file the nominated candidates' nomination papers, which include, *inter alia*, "a certification by the chair[person] of the names of all candidates for office in the township nominated at the caucus." 60 ILCS 1/45-20 (West 2020).

¶ 54    On this issue, the candidates argue the "certification" referred to in section 45-20 need not be sworn under oath. They note the legislature has elsewhere, in the context of elections, included language requiring that nomination papers be signed under oath but chose not to include such language in section 45-20. Compare *id.*, with 10 ILCS 5/10-1 (West 2020).

¶ 55    For his part, Halley offers no argument on the issue of what constitutes a "certification" under section 45-20 of the Township Code if section 10-1 is inapplicable. Rather, he merely asserts the certification required under section 45-20 of the Township Code must be sworn because section 10-1 of the Election Code provides "every" certificate of nomination must be sworn. But as has been established, section 10-1 of the Election Code is inapplicable to nominations made by established political parties under the Township Code. Accordingly, Halley has forfeited any argument that the "certification" required by section 45-20 of the Township Code must be sworn. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 56    Forfeiture aside, we note the Township Code does not define "certification" as that term is used in section 45-20. It does, however, define "certify" and "certification" as that term is used "in connection with elections of officers and referenda," as referring "to the certification, in accordance with the general election law, of offices, candidates, or propositions to county clerks *** for inclusion on one ballot at an election." 60 ILCS 1/50-45(b)(2) (West 2020). The term "certification" as used in the Election Code sets forth the process under which a local election official certifies to the election authority the names of nominated candidates for inclusion on the ballot. See 10 ILCS 5/7-60.1 (West 2020). In other words, "certification," as that term is used in the Election Code, describes an act to be taken. But as used in section 45-20 of the Township Code, a "certification" is a document—part of a candidates' nomination papers—that must be filed with the township clerk. Thus, the Township Code's borrowed definition of "certify" and "certification" does not define what constitutes the "certification" required under section 45-20.

¶ 57    Nevertheless, a side-by-side comparison of section 45-20 and section 10-1(a) of the Election Code leads us to the inescapable conclusion that a "certification" as required by

section 45-20 of the Township Code is distinct from the "certificate of nomination" required under section 10-1(a) of the Election Code, and it need not be sworn.

¶ 58 Again, because article 45 of the Township Code and the Election Code relate to the same subject, that is, the nomination and election of candidates, we must presume the statutes are governed by one spirit and a single policy. *United Citizens*, 125 Ill. 2d at 339. And when the legislature includes particular language in one portion of a statute but excludes it from another, we must presume " 'the legislature acted intentionally and purposely in the inclusion or exclusion [citations], and that the legislature intended different meanings and results.' " *Clark*, 2019 IL 122891, ¶ 23 (quoting *Chicago Teachers Union, Local No. 1 v. Board of Education of Chicago*, 2012 IL 112566, ¶ 24).

¶ 59 Section 45-20 of the Township Code and section 10-1 of the Election Code are analogous, both prescribing what constitutes proper nomination papers in the context of nominations by caucus for township office and municipal office in certain municipalities, respectively. Section 45-20 requires a "certification" stating the names of the candidates to be prepared and filed by the township central committee chairperson and a statement of candidacy to be prepared by the candidate in accord with section 10-5 of the Election Code. 60 ILCS 1/45-20 (West 2020). Section 10-1 of the Election Code, on the other hand, requires the presiding officer of a municipal caucus to prepare a "certificate of nomination," which "shall state the facts required in [s]ection 10-5 of [the Election Code]" and must be sworn by the presiding officer and secretary to be true to the best of their knowledge and belief. 10 ILCS 5/10-1(a) (West 2020). Thus, while section 10-1 specifically requires the "certificate of nomination" filed under that section to be sworn by the presiding officer and secretary of the caucus, no such oath requirement is present in section 45-20 of the Township Code. Accordingly, we conclude the "certification" required under section 45-20 of the Township Code need not be sworn. Had the legislature intended the "certification" to be sworn, it could have included language similar to that used in section 10-1 of the Election Code. However, it did not, and we must presume the legislature acted intentionally in omitting that requirement from nomination papers under section 45-20 of the Township Code. *Clark*, 2019 IL 122981, ¶ 23.

¶ 60 Here, Maher, the township central committee chairperson, timely filed with the township clerk a certification stating the names of the candidates to be placed on the ballot for township office at the April 6, 2021, consolidated election. The candidates prepared statements of candidacy stating they were qualified to hold the township office they sought and had been duly nominated at the caucus, which Maher filed contemporaneously with the certification. Accordingly, we conclude the board erred in sustaining Halley's objection and striking the candidates' names from the ballot.

¶ 61 In reaching our conclusion, we reject Halley's argument and the board's determination that, without a proper certificate of nomination that complied with section 10-1, the board was unable to conclude the candidates were, in fact, qualified to hold office and were nominated at the caucus. Again, Halley did not raise affirmative allegations of fraud or impropriety in the conduct of the caucus or nomination of the candidates. And in their statements of candidacy, each candidate stated, under oath, that he or she was qualified to hold the office he or she sought and had been duly nominated at the caucus. Though the statements of candidacy may be self-serving, that is the only sworn proof of nomination the legislature has seen fit to require in the context of nominations for township office. Accordingly, we conclude the board erred

in sustaining Halley's objection and striking the candidates' names from the ballot. We, therefore, affirm the circuit court's judgment reversing the board's decision.

¶ 62    In closing, we note that in cases involving issues of statutory interpretation, we are bound to ascertain and give effect to the legislature's intent, which we accomplish by looking at the plain language of the relevant statutes. Here, the plain language of those statutes leads us to the conclusion that the "certification" required under section 45-20 of the Township Code need not be sworn, and, therefore, the board erred by removing the candidates' names from the ballot. However, we note the statutes at issue here leave much to be desired, such as a statutory definition of the term "certification" as that term is used in section 45-20 of the Township Code. Such a definition would have eliminated the confusion that manifested in this case that was caused, in part, by *Moon*'s statement that section 10-1 applied to township nominations despite clear statutory language to the contrary. We presume the legislature has been aware of *Moon* since it was decided. *Burrell v. Southern Truss*, 176 Ill. 2d 171, 176 (1997). Yet, in the 30 years since, it has not amended the statute to provide clarity to this apparent conflict between the provisions of the Township Code relating to the nomination of candidates by established political parties and caselaw that has purported to interpret those provisions. Candidates, electoral boards, and local election officials must often make decisions relating to ballot access under the pressure of extremely short and strict deadlines. They should be able to rely on caselaw that explains the meaning of the relevant statutes, and when courts interpret statutes in a manner that is inconsistent with the plain language of the statute, the legislature should take action to make clear what its intent was and is.

¶ 63    Moreover, we are deeply concerned that, in the context of nominations made under the Township Code, the legislature has seen fit to require sworn proof of nomination only from the candidates who are seeking to be placed on the ballot and not from some third party. We believe that the absence of sworn proof of nomination from some person other than the candidates themselves opens the process to the possibility of fraud, deceit, and misdeed. That being said, the legislature has, for whatever reason, found that proof of nomination need only be provided by the candidate, and this is not the appropriate forum in which to effect change to the statutory scheme.

¶ 64                                    III. CONCLUSION
¶ 65    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 66    Affirmed.