2022 IL App (2d) 210689
No. 2-21-0689
Opinion filed December 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* APPLICATION OF THE | ) | Appeal from the Circuit Court |
| COUNTY TREASURER AND *ex officio* | ) | of Lake County. |
| COUNTY COLLECTOR OF LAKE COUNTY, | ) | |
| ILLINOIS, for Judgment and Order of Sale | ) | |
| Against Real Estate Returned Delinquent for | ) | No. 18-TD-11 |
| the Non-Payment of General Taxes and | ) | |
| Special Assessment for the Year 2014 and | ) | |
| Prior Years | ) | |
| | ) | |
| | ) | Honorable |
| (FINA IP, LLC, Petitioner-Appellee v. Mark | ) | Michael B. Betar, |
| Eaton, Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment and opinion.

## OPINION

¶ 1 Petitioner, FINA IP, LLC (FINA), was assigned delinquent taxes, purchased in November 2015, on property in Lake Villa that was owned by respondent, Mark Eaton, which triggered a redemption period that (as later extended) expired on June 29, 2018. In February 2018, FINA petitioned the circuit court, under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2018)), to issue a tax deed, asserting it was entitled to the deed if Eaton failed to redeem on or before the deadline.

¶ 2 Less than one month before the expiration of the redemption period, on May 31, 2018, Eaton petitioned for relief under Chapter 13 of the United States Bankruptcy Code (Bankruptcy

Code) (11 U.S.C. §§ 1301 to 1330 (2018)), triggering an automatic stay (*id.* § 362) that enjoined FINA from proceeding any further in the circuit court. On June 25, 2021, on FINA's motion, the bankruptcy court lifted the stay as to FINA's claim, and FINA proceeded on its petition in the circuit court. After a hearing, on August 20, 2021, the court granted the petition, and it later denied Eaton's motion to reconsider.

¶ 3     Eaton appeals, arguing the circuit court erred by granting FINA's petition, because he paid directly to the county clerk the full redemption amount on August 16, 2021, four days before the deed was issued. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                A. The Relevant Provisions of the Property Tax Code

¶ 6     To better frame our discussion, we briefly summarize the relevant provisions of the Property Tax Code. Property taxes are due the year after the year in which they accrue and, in counties with fewer than 3 million people, such as Lake County, are paid in two equal installments, on June 1 and September 1. At the beginning of the year in which taxes are due, "[t]he taxes upon property, together with all penalties, interests[,] and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances." 35 ILCS 200/21-75 (West 2018). The lien attaches in favor of the county, and when the taxes are paid, the lien is extinguished. *Id.*

¶ 7     When the taxes are not paid, the county tax collector (in this case the county treasurer) may, within 90 days after the second installment is due, apply for a judgment and order of sale. *Id.* § 21-150. Within 120 days of the date the second installment is due, the circuit court must "hear

and determine the matter" (*id.*), and, if judgment is rendered, the collector, as relevant here, may sell the property at an annual sale (*id.* § 21-190).[1]

¶ 8 At the annual sale, persons wishing to purchase the property place bids based upon the percentage of penalty (*i.e.*, interest) they are willing to accept on the delinquent taxes, which is capped by statute. *Id.* § 21-215. The person willing to accept the *lowest* penalty percentage is the purchaser of the property. *Id.* If the purchaser pays all taxes, interest, and costs due, the county's lien is extinguished, and the county clerk must issue to the purchaser a certificate of purchase that describes the property sold and lists "the date of sale, the amount of taxes, special assessments, interest and cost for which [the property was] sold and that payment of the sale price has been made." *Id.* § 21-250.

¶ 9 The sale of the property triggers a redemption period, in which the property owner may "redeem" the property by paying the certificate amount, plus the accrued penalty (calculated by multiplying the certificate amount by a multiple of the penalty bid), the total of all taxes, special assessments, interest, and costs that became delinquent after the sale and before the expiration of the redemption period and were paid or redeemed by the holder of the certificate of purchase (together with a penalty), and certain other charges and fees (redemption amount). *Id.* § 21-355. The length of the redemption period depends on the type of property at issue. When, as here, the property is improved with a single-family residence, the redemption period is two years and six months. *Id.* § 21-350(b). However, the purchaser (or his or her assignee) may extend the redemption period, but to no more than three years from the date of sale. *Id.* § 21-385. The

---

[1]If three or more years of taxes are delinquent (in whole or in part), the property may be sold at a "scavenger sale." See 35 ILCS 200/21-145, 21-260 to 21-290 (West 2018).

certificate of purchase, which the purchaser may assign (*id.*), represents, (1) if the property owner redeems, the right to payment, via the county clerk, of the delinquent taxes and accrued penalty (*id.* §§ 21-345 to 21-397), or (2) if the property owner fails to redeem by the deadline, the right to petition the circuit court for an order directing the clerk to issue a tax deed (*id.* §§ 22-5 to 22-95).

¶ 10     If the property owner (or some other interested party) does not redeem the property before the expiration of the period, then the purchaser may obtain from the county clerk a tax deed, making it the legal owner of the property. See *id.* § 22-55 (a tax deed conveys merchantable title). To do so, the purchaser must comply with certain notice requirements and, at least three months but not more than six months before the expiration of the redemption period, file a petition asking the circuit court to enter an order directing the county clerk to issue the deed. *Id.* §§ 22-5 to 22-30, 22-40. The property owner may still redeem the property after the petition is filed, but, once the redemption period expires, the purchaser may apply to the court for an order on the petition. See *id.* § 22-30. Upon application, the court must direct the county clerk to issue the deed if it is satisfied that (1) "the redemption period [has] expire[d] and the property has not been redeemed"; (2) "all taxes and special assessments which became due and payable subsequent to the sale have been paid"; (3) "all forfeitures and sales which occur subsequent to the sale have been redeemed"; (4) "the notices required by law have been given"; (5) "all advancements of public funds under the police power made by a county, city, village or town under Section 22-35 have been paid"; and (6) "the petitioner has complied with all the provisions of law entitling him or her to a deed." *Id.* § 22-40. The purchaser must obtain the deed and record it within one year after the expiration of the redemption period; otherwise, the certificate of purchase or deed, and the underlying sale, are void, and the purchaser is not entitled to reimbursement. *Id.* § 22-85. However, an injunction or

court order, such as the automatic stay in bankruptcy proceedings, that prevents the purchaser from doing so tolls the one-year period. *Id.*

¶ 11 With this basic framework in mind, we turn to the relevant facts, which are generally undisputed.

¶ 12 B. FINA Purchases Delinquent Taxes on Eaton's Property

¶ 13 Eaton was the owner of property, which was improved by a single-family residence, on Parma Avenue in Lake Villa. Eaton failed to pay the property taxes for 2014 and, on November 16, 2015, Sitesale, Ltd., purchased the delinquent taxes at an annual sale and was issued a certificate of purchase. Because the property was Eaton's residence, the sale triggered a two-year, six-month redemption period that expired on May 16, 2018. Sitesale, Ltd., later assigned the certificate to FINA, and FINA extended the redemption period to June 29, 2018.

¶ 14 C. FINA Petitions for a Tax Deed

¶ 15 On February 8, 2018, FINA petitioned the circuit court for an order directing the county clerk to issue it a tax deed. It alleged it had purchased the delinquent 2014 taxes on the property, the redemption period (as extended) would expire on June 29, 2018, and it was entitled to a tax deed in the event Eaton failed to redeem by the deadline. There is no dispute that FINA complied with all applicable notice provisions.

¶ 16 D. Eaton Petitions for Relief Under the Bankruptcy Code

¶ 17 On May 31, 2018, less than a month before the expiration of the redemption period, Eaton petitioned for relief under Chapter 13 of the Bankruptcy Code, triggering the automatic stay and preventing FINA from proceeding on its petition. On October 5, 2018, the bankruptcy court confirmed Eaton's Chapter 13 repayment plan, which provided that Eaton would pay the

redemption amount and, presumably, other debts[2] over a period of 60 months. Accordingly, on July 13, 2018, the circuit court placed the matter on its bankruptcy call and later granted FINA's motion to toll the time to take out and record the tax deed. See *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 309 Ill. App. 3d 181, 191 (1999) (*Bryant*) (though not required under section 22-85 of the Property Tax Code, the "better practice" is to file a motion to toll).

¶ 18         E. The Bankruptcy Court Grants FINA Relief From the Automatic Stay

¶ 19     On October 22, 2020, FINA filed a motion in the bankruptcy court, asking for relief from the stay. FINA alleged that, since it purchased the delinquent 2014 taxes in 2015, it (or its predecessors in interest) had paid the 2015, 2016, and 2017 taxes due on the property and the total amount due, as of Eaton's bankruptcy petition, was $14,634.11. After Eaton filed his bankruptcy petition, the 2018 and 2019 property taxes (due in 2019 and 2020), totaling $7954.71, had not been paid. Additionally, FINA did not have proof that the property was insured. Thus, according to FINA, it lacked adequate protection and was entitled to relief from the stay.

¶ 20     Eaton objected to FINA's motion and also moved to modify his Chapter 13 plan. In his motion, Eaton alleged it was the county clerk's policy to reject a taxpayer's payments for taxes coming due after a tax sale unless the taxpayer redeemed in full the previously sold taxes. However, the tax purchaser is given the opportunity to pay the postpurchase taxes. FINA paid the 2018 and 2019 taxes, which raised the redemption amount. Eaton asked the bankruptcy court to

---

[2]The record does not contain a schedule of Eaton's creditors but, during the circuit court proceedings, the parties intimated that the county was the largest creditor (for the delinquent taxes), implying that there were other, smaller creditors.

include the 2018 and 2019 taxes in his Chapter 13 plan and to raise his monthly payment to the bankruptcy trustee to cover the increase.

¶ 21    On June 25, 2021, the bankruptcy court granted FINA's motion to lift the stay, stating as follows:

> "The motion is granted. The stay is modified as to the service of various notices, the application, prove up, issuance of a Tax Deed and enforcement of any subsequent Order of Possession and any other action by FINA IP LLC or their successors regarding [the property]. *In rem* remedies only."

Eaton did not appeal the bankruptcy court's decision to lift the stay. According to Eaton, the bankruptcy court did not address his motion to modify his Chapter 13 plan before lifting the stay.

¶ 22                F. FINA Proceeds on Its Petition in the Circuit Court

¶ 23    On July 9, 2021, the circuit court granted FINA's motion to remove the proceedings from the bankruptcy call. It set the matter for prove up on August 20, 2021, over FINA's objection, so that Eaton, who was self-represented at the time, could have six weeks to retain counsel.

¶ 24    Eaton did not retain counsel. Instead, on August 16, 2021, he tendered to the county clerk (presumably a deputy) checks and cash totaling $14,634.11, which was the redemption amount as of the date Eaton filed his bankruptcy petition. The clerk accepted the payment and issued to Eaton a "Redemption Payment Receipt," which stated the redemption amount had been paid in full. The receipt was backdated to June 29, 2018, *i.e.*, the date the redemption period expired.

¶ 25    At the prove-up hearing, Eaton appeared without an attorney and told the court that he "contacted [FINA's attorney] two days ago to let him know that the redemption ha[d] been paid for the taxes." Eaton also said that he had attempted to contact his bankruptcy attorney but received

no response. He did not present to the court the receipt from the county clerk that had been issued days earlier. Eaton asked the court for additional time to retain an attorney.

¶ 26    The circuit court noted that the bankruptcy court had lifted the stay as to the proceedings and, thus, nothing was preventing the proceedings from moving forward. The court entered an order granting the petition and directing the county clerk to issue FINA a tax deed. The court told Eaton he could retain counsel and file a motion to reconsider.

¶ 27        G. The County Clerk Issues the Deed to FINA and Returns Funds to Eaton

¶ 28    On August 30, 2021, FINA paid $12,932.16 for the 2018, 2019, and 2020 taxes (due in 2019, 2020, and 2021) that had accrued on the property since the expiration of the redemption period, and the county clerk issued to FINA the tax deed as directed by the circuit court's August 20, 2021, order. That same day, FINA conveyed the property to Atropus, LLC. Also on that day, the county clerk sent Eaton a letter and a refund, stating it had received the order directing it to issue the tax deed, it was required to comply with the order, and, therefore, the "redemption ha[d] been reversed."

¶ 29        H. Eaton Moves to Reconsider the Order Granting FINA's Petition

¶ 30    Eaton retained counsel and, on September 13, 2021, moved to reconsider the order granting FINA's tax-deed  petition. In his motion, Eaton asserted the county clerk's acceptance of the full redemption amount, evidenced by a backdated receipt, established that "he had fully redeemed [the property], effectively by the required redemption deadline of June 29, 2018." According to Eaton, under federal bankruptcy law, the confirmation of his Chapter 13 repayment plan effectively tolled the redemption deadline, because he was entitled to pay the redemption amount in 60 equal monthly installments.

¶ 31    FINA responded that Eaton's attempt to avoid the tax deed was an improper collateral attack on the bankruptcy court's order lifting the stay and the circuit court lacked authority to modify that order in any way. It contended that the redemption period was defined by statute and that neither the filing of a bankruptcy petition before its expiration nor the confirmation of a Chapter 13 plan was a redemption under Illinois law. Further, FINA contended, the doctrines of *res judicata* and collateral estoppel barred the circuit court from ignoring the bankruptcy court's determination that FINA could proceed to apply for and prove up its claim to the tax deed.

¶ 32    In reply, Eaton reiterated that FINA was not entitled to the tax deed, because he redeemed the property within the required timeframe. According to Eaton, the receipt showing the redemption amount had been paid "retroactive to the June 29, 2018[,] deadline" definitively established that he had done so.

¶ 33    After a hearing, the circuit court denied the motion, and this appeal followed.

¶ 34                                II. ANALYSIS

¶ 35    On appeal, Eaton primarily argues that his bankruptcy petition effectively tolled the statutory redemption deadline, as extended, and, thus, he redeemed the property when, on August 16, 2021, he tendered the redemption amount to the county clerk. Eaton also argues that the circuit court should have exercised its equitable powers in favor of redemption, especially given the settled principle that courts must liberally construe the Property Tax Code's redemption provisions. Additionally, Eaton notes that FINA failed to object to or appeal from the confirmation of his Chapter 13 plan and also asked the court to toll the time to obtain and record the deed. Accordingly, he argues, FINA is barred, under the doctrines of *res judicata*, collateral estoppel, and waiver by participation, from arguing that the taxes were not treatable as a secured claim in his bankruptcy and that the confirmation of his plan did not toll the redemption deadline.

¶ 36                                    A. Standard of Review

¶ 37      The issue in this appeal is whether Eaton's tender of the redemption amount (as of the date

of his bankruptcy petition) to the county clerk four days before the circuit court granted FINA's

petition was a redemption under the Property Tax Code. Because the relevant facts are not

disputed, this is a question of law, which we review *de novo*. *City of Champaign v. Torres*, 214 Ill.

2d 234, 241 (2005).

¶ 38      To the extent the appeal requires us to construe the Property Tax Code, our review is also

*de novo*. *Board of Education of Richland School District No. 88A v. City of Crest Hill*, 2021 IL

126444, ¶ 20. "Our primary objective in construing a statute is to ascertain and effectuate the

legislature's intent." *Hacker v. Halley*, 2021 IL App (2d) 210050, ¶ 20. We are guided by the

statute's language, which is the best indication of that intent, and we must apply the statute as

written, giving the words used their plain and ordinary meaning. *Id.* We cannot "add provisions

that are not found in a statute, nor [can we] depart from [the] statute's plain language by reading

into the law exceptions, limitations, or conditions that the legislature did not express." *Schultz v.

Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). And, when the legislature uses

language in one provision but excludes it from another, we must presume the legislature purposely

excluded it and intended different results. *Hacker*, 2021 IL App (2d) 210050, ¶ 58 (citing *People

v. Clark*, 2019 IL 122891, ¶ 23).

¶ 39      B. Eaton Did Not Effectively Redeem the Property Under the Property Tax Code

¶ 40      Section 21-350 of the Property Tax Code governs the length of the redemption period. It

provides that, when the property at issue is improved with a single-family residence, the

redemption period is two years and six months. 35 ILCS 200/21-350(b) (West 2018). A tax

"purchaser *** may extend the period of redemption *** for a period which will expire not later

than 3 years from the date of sale" (*id.* § 21-385), and, in such cases, "the property may be redeemed on or before the extended redemption date" (*id.* § 21-350(c)). Section 21-355 sets forth how the redemption amount is calculated. *Id.* § 21-355. It also governs how a redemption must be paid:

> "Any person desiring to redeem shall deposit an amount specified in this Section with the county clerk of the county in which the property is situated, in legal money of the United States, or by cashier's check, certified check, post office money order or money order issued by a financial institution insured by an agency or instrumentality of the United States, payable to the county clerk of the proper county. *The deposit shall be deemed timely only if actually received in person at the county clerk's office prior to the close of business *** on or before the expiration of the period of redemption* or by United States mail with a post office cancellation mark [(*i.e.*, postmark)] dated not less than one day prior to the expiration of the period of redemption." (Emphasis added.) *Id.*

Thus, the Property Tax Code sets a firm deadline by which the county clerk may accept a redemption. When the redemption is hand delivered, a redemption is timely *only* if the county clerk receives it in person before the close of business on the last day of the redemption period, which may be extended by *the tax purchaser* but not beyond three years from the date of sale.

¶ 41    Here, the delinquent taxes were purchased on November 16, 2015, triggering the redemption period, which would have expired on May 16, 2018, if not extended. FINA extended the redemption deadline to June 29, 2018. Eaton did not tender the redemption amount to the county clerk before that date. Instead, more than three years after the extended redemption deadline, on August 16, 2021, Eaton tendered the redemption amount, which included the 2014, 2015, 2016, and 2017 taxes but not any of the subsequently accruing taxes. The county clerk

accepted the payment from Eaton and issued a redemption receipt that was backdated to the extended redemption deadline, June 29, 2018.

¶ 42    We conclude this was not a proper redemption under the Property Tax Code. It is well settled that a redemption received after the deadline is a nullity and has no effect. *In re Application of the County Collector*, 265 Ill. App. 3d 485, 492 (1994). And nothing in the Property Tax Code permitted the county clerk (or her deputy) to unilaterally alter the redemption deadline, accept the tender more than three years late, and then backdate the receipt. Admittedly, the county clerk's unconditional acceptance of a tender can weigh in favor of finding a valid redemption, but we will not extend that principle to a case where the tender is more than three years late. See *id.* The clerk's acceptance of Eaton's attempted redemption was a nullity, and the tender had no effect on FINA's entitlement to the tax deed.

¶ 43    Eaton nevertheless argues that his bankruptcy petition and the confirmation of his Chapter 13 plan tolled the redemption deadline. Specifically, he argues that, because a claim like FINA's may be treated as a secured claim in a Chapter 13 bankruptcy, and because his Chapter 13 plan allowed him to pay the redemption amount over a 60-month period, his bankruptcy tolled the redemption period. Though Eaton does not in this court state how long the redemption period was tolled, he argued in the circuit court that it was tolled for the length of his Chapter 13 plan, *i.e.*, 60 months.

¶ 44    We reject Eaton's argument. Neither the automatic stay triggered by Eaton's bankruptcy petition nor the confirmation of his Chapter 13 plan tolled the redemption period.

¶ 45    To be sure, Eaton's argument begins with a solid premise. The federal courts sitting in Illinois have held that a tax purchaser's claim may be treated as a secured claim in a property owner's Chapter 13 bankruptcy. See, *e.g.*, *In re LaMont*, 740 F.3d 397, 406-09 (7th Cir. 2014);

accord *Gan B, LLC v. Sims*, 575 B.R. 375, 379 (N.D. Ill. 2017). This is true even if the redemption deadline has passed *before* the property owner seeks bankruptcy protection, provided a tax deed has not yet been issued and recorded. *In re Robinson*, 577 B.R. 294, 305 (Bankr. N.D. Ill. 2017). In such cases, a property owner is entitled to pay the claim over a period not exceeding 60 months, notwithstanding the expiration of his or her right to redemption. 11 U.S.C. § 1322(b)(2), (d).

¶ 46    However, it is well settled that the treatment of a claim in a Chapter 13 plan is not a formal redemption and has no tolling effect on the redemption period. See *LaMont*, 740 F.3d at 410 ("[O]ur holding does not toll the redemption period. The redemption period expires when it expires. All that is tolled is the tax purchaser's time to obtain a tax deed after the redemption period expires, and that is a direct result of [section 22-85 of the Property Tax Code]."). The acts of redemption and using a Chapter 13 plan to pay a claim are wholly distinct: "[d]ebtors may use the Chapter 13 device to pay such tax debt over time because '*they are not exercising their right to redeem*' but instead 'are using their Chapter 13 plan to pay a secured claim over time, as they are entitled to do' under [section 1322(b)(2) of the Bankruptcy Code]," which preempts more restrictive state law. (Emphasis added.) *Sims*, 575 B.R. at 379 (quoting *In re Kasco*, 378 B.R. 207, 213 (Bankr. N.D. Ill. 2007)).

¶ 47    A plain reading of both the Bankruptcy Code and the Property Tax Code supports this conclusion. Nothing in the automatic stay provision (11 U.S.C. § 362) or the provisions relating to the Chapter 13 plan (*id.* §§ 1321 to 1330) contain any language tolling applicable nonbankruptcy laws. To conclude the automatic stay or the confirmation of a Chapter 13 plan tolls the redemption period would require us to read into the law provisions that Congress was capable of expressing, but did not, and would render section 108(b), which briefly tolls redemption periods, superfluous. See *id.* § 108(b).

¶ 48    Nor does any provision in the Property Tax Code state that Chapter 13 bankruptcy proceedings toll the redemption deadline, let alone that the deadline can be tolled at all. Rather, the Property Tax Code provides a firm deadline by which the property must be redeemed, or else the tax purchaser may apply for the tax deed: when a single-family residence is involved, the property may be redeemed at any time *before* the expiration of two years and six months from the date of sale if not extended (by *the purchaser*) to a maximum of three years from the date of sale, and not after. 35 ILCS 200/21-350, 21-385 (West 2018); see also *id.* § 21-355 (a redemption is timely "*only if* actually received in person at the county clerk's office prior to the close of business *** on or before the expiration of the period of redemption" or by mail with a postmark of at least one day before the expiration of the period (emphasis added)). We cannot read into the statute a provision that allows that firm deadline to be tolled when the property owner has sought bankruptcy protection (*Schultz*, 237 Ill. 2d at 408), particularly because the legislature has stated that other statutory deadlines in the Property Tax Code can be tolled. See *Hacker*, 2021 IL App (2d) 210050, ¶ 58 (the legislature's inclusion of language in one provision and exclusion in another provision creates a presumption that the exclusion was intentional and the legislature intended different results); 35 ILCS 200/22-85 (West 2018) ("If the holder of the certificate [of purchase] is prevented from obtaining a deed by injunction or order of any court ***, the time he or she is so prevented shall be excluded from computation of the one[-]year period" in which the tax purchaser must obtain and record the deed.).

¶ 49    We appreciate that FINA was precluded from proceeding on its tax-deed petition even after the expiration of the redemption period. But it was not prevented from proceeding because Eaton's bankruptcy tolled the redemption period. Rather, it was prevented from proceeding by the automatic stay, which enjoined FINA from taking any action to obtain possession of or enforce its

lien on the property over the life of the Chapter 13 plan. See 11 U.S.C. § 362(a)(3), (4); *In re McKinney*, 341 B.R. 892, 897 (Bankr. C.D. Ill. 2006) (proceedings on tax deed constitute an action to obtain possession of or enforce a lien on the property, running afoul of subsections (a)(3) and (a)(4) of the stay provision); see also *In re Application of the County Collector*, 367 Ill. App. 3d 34, 38 (2006) (determining that the tax purchaser's tax-deed petition was stayed under section 362(a)(3)). Once the redemption period ended, Eaton's state-law right to redeem evaporated (*LaMont*, 740 F.3d at 410), and the sole impediment to FINA proceeding on its petition to its ultimate result (*i.e.*, the issuance of the tax deed) was the automatic stay. The stay protected Eaton's federal-law right to pay the claim over time, so long as he complied with the plan or FINA did not obtain relief from the stay. See *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 308 Ill. App. 3d 33, 40 (1999) (*Cambridge Investment Group*) (unless a party obtains relief from the stay, the stay remains in effect until, (1) with respect to acts against property, the property is no longer property of the bankruptcy estate, or, (2) with respect to any other act, the bankruptcy case is closed, the case is dismissed, or a discharge is granted or denied, whichever occurs first).

¶ 50    Of course, FINA was free to ask the bankruptcy court to lift the stay so it could proceed on its tax-deed claim in the circuit court. It did so, asserting there was "cause" to lift the stay. See 11 U.S.C. § 362(d)(1) (permitting an interested party to ask for relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest"). Specifically, FINA asserted, Eaton had failed to pay the postbankruptcy petition property taxes that had come due and failed to maintain insurance on the property. The bankruptcy court granted FINA relief and modified the stay "as to the service of various notices, the application, prove up,

issuance of a Tax Deed and enforcement of any subsequent Order of Possession and any other action by FINA *** or their successors regarding [the property]."

¶ 51    In the circuit court, FINA argued Eaton's motion to reconsider the tax-deed order was an improper collateral attack on the bankruptcy court's decision and also referenced the doctrines of *res judicata* and collateral estoppel. On appeal, Eaton argues that the bankruptcy court's decision to lift the stay did not have *res judicata* effect in the state court proceedings. We need not address Eaton's argument, however, because FINA abandons the doctrines on appeal and instead concedes that, once the circuit court proceedings resumed, Eaton could appear in those proceedings and challenge the issuance of a tax deed.

¶ 52    However, we agree with FINA's assertion that Eaton could not challenge in the circuit court the bankruptcy court's decision to modify the stay as to FINA's claim and allow it to proceed in the circuit court. See *Cambridge Investment Group*, 308 Ill. App. 3d at 42 (a bankruptcy court's determination regarding the effect of a stay trumps a determination made by a nonbankruptcy court); *In re Mid-City Parking, Inc.*, 332 B.R. 798, 804-05 (Bankr. N.D. Ill. 2005) (federal courts "have the final word on the scope and applicability of the automatic stay" (internal quotation marks omitted)). When the bankruptcy court lifted the stay, the sole impediment to FINA proceeding on its petition in the circuit court—the automatic stay—was no longer in effect. At that point, FINA was entitled to the tax deed if it proved that (1) "the redemption period expire[d] and the property ha[d] not been redeemed"; (2) "all taxes and special assessments which became due and payable subsequent to the sale ha[d] been paid"; (3) "all forfeitures and sales which occur[ed] subsequent to the sale ha[d] been redeemed"; (4) "the notices required by law ha[d] been given"; (5) "all advancements of public funds under the police power made by a county, city, village or town under

Section 22-35 ha[d] been paid"; and (6) "the petitioner ha[d] complied with all the provisions of law entitling him or her to a deed." 35 ILCS 200/22-40 (West 2018).

¶ 53　In the circuit court, Eaton did not dispute that FINA had in all respects complied with the Property Tax Code relating to the issuance of a tax deed. Rather, the only point in dispute was whether Eaton timely redeemed the property. On that point, Eaton argued that he had fully redeemed the property, effectively by the redemption deadline, because the county clerk accepted the redemption amount and backdated the receipt. Thus, he maintained, the court should not have issued the deed.

¶ 54　As noted above, the Property Tax Code sets forth a firm deadline by which a property must be redeemed. There is no question that Eaton made the payment more than three years after the redemption deadline expired, on August 16, 2021, and the backdated receipt does not undermine this undisputed fact. Under these circumstances, the circuit court correctly concluded Eaton did not timely redeem the property. And because no dispute existed as to FINA's compliance with the Property Tax Code, the court properly concluded FINA was entitled to the tax deed.

¶ 55　　C. The Circuit Court Did Not Err When It Failed to Invoke Its Equitable Powers

¶ 56　Eaton also argues, for the first time on appeal, that because Illinois courts construe liberally the Property Tax Code's redemption provisions in favor of the right to redemption, the circuit court should have exercised its equitable powers to find he timely redeemed the property. In support, he relies on *In re Application for a Tax Deed*, 2018 IL App (5th) 170170 (*Street*).

¶ 57　Although the Property Tax Code sets forth a firm deadline by which a property may be redeemed, the modern trend is for courts to exercise their equitable powers and flexibly apply the deadline to achieve equity and fairness in certain circumstances. See *id.* ¶ 12. Generally, courts have reserved the use of their equitable powers to alter the deadline to cases " 'involving a

taxpayer's detrimental reliance on erroneous statements made by the clerk's office.' " *Id.* (quoting *In re Application of the County Treasurer & ex officio County Collector*, 378 Ill. App. 3d 842, 849 (2007)).

¶ 58    In *Street*, however, the appellate court affirmed the circuit court's decision, based in equity, to allow a late redemption in a case that did not involve a taxpayer's reliance on an erroneous statement made by the clerk's office but, rather, involved a mistake by property owners as to the redemption deadline. There, the redemption period was set to expire on October 7, 2016. *Id.* ¶ 3. The tax purchaser petitioned for a tax deed and sent a corresponding notice that informed the property owners that the redemption deadline would expire on October 7, 2016, and the tax-deed petition would be heard on October 21, 2016. *Id.* On October 12, 2016, one of the property owners prepared to travel to the county clerk's office to redeem and realized that she had been confused by the two differing dates on the notice. *Id.* ¶ 4. After confirming with the county clerk that the redemption period had expired, on October 20, 2016 (before the hearing on the tax-deed petition), the property owners filed a petition asking the circuit court to use its equitable powers to extend the redemption deadline. *Id.* In the petition, the property owners alleged they erroneously believed they had until October 21, 2016, to redeem. *Id.* They also alleged they had continued to pay the taxes on their home after the tax purchaser received the certificate of purchase, their home had a fair market value of $30,000, and the amount required to redeem was $1316.97. *Id.* The October 21, 2016, hearing was continued by agreement, and the court later entered an order extending the redemption period to February 9, 2017. *Id.* ¶ 5. On February 6, 2017, the property owners redeemed the property. *Id.*

¶ 59    On appeal, the tax purchaser argued that a property owner's detrimental reliance on erroneous statements made by a public official was a prerequisite for the court to flexibly apply

the Property Tax Code's redemption provisions. *Id.* ¶ 13. The appellate court rejected this argument, instead finding the circuit court properly exercised its equitable powers to alter the redemption deadline "[u]nder the unique circumstances presented in th[e] record." *Id.* ¶ 20.

¶ 60 The appellate court noted that, because "[e]quity abhors forfeiture," the policy of this state was that "the right of redemption is substantial and that anyone possessing that right should not lose it *because of mistake or misinterpretation*." (Emphasis added.) *Id.* ¶ 17. Thus, the court concluded, "the circuit court properly favored redemption and sought to give a liberal construction to the redemption laws, considering that [the tax purchaser] suffered no injury" in not receiving the deed. *Id.* ¶ 18. In contrast, the court explained, the property owners would have suffered an egregious forfeiture had the deadline not been extended: they would have lost their home with a fair market value of $30,000 because of a misunderstanding as to the redemption period's expiration date. *Id.*

¶ 61 One problem with Eaton's reliance on equity here is that he raised the issue for the first time on appeal. A party forfeits an issue for review when he or she fails to raise it in the circuit court. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. This rule is designed to encourage parties to raise issues in the circuit court, so the court can correct any errors before an appeal is taken and a party does not obtain a reversal through his or her own inaction. *Id.* Eaton never asked the circuit court to exercise its equitable powers to alter the redemption deadline, before or after the court directed the county clerk to issue the tax deed. He nevertheless asserts the court "should have properly exercised its equitable powers under these circumstances, if, in fact, any formal extension [of the redemption period was] needed." We fail to see how the court could have erred by not granting relief that was never requested.

¶ 62    To be sure, the prayers for relief in Eaton's motion to reconsider and reply in support both requested that the circuit court award him  "such other and further relief th[e] [c]ourt deem[ed] just and equitable in the premises." This nonspecific, boilerplate request for equitable relief was not sufficient to preserve the issue. Eaton never presented to the circuit court an argument concerning the court's equitable authority or how the equities in this case favored an extension of the deadline by more than three years. Accordingly, we conclude Eaton forfeited his argument.

¶ 63    Forfeiture aside, we note *Street* is distinguishable in at least four important respects. First, this case is in a much different procedural posture than *Street*. The property owners in *Street* raised the issue in the circuit court, *before* the hearing on the tax-deed petition.

¶ 64    Second, the property owners in *Street* were otherwise current on their property taxes and had paid them even after the tax purchaser had obtained a certificate of purchase. Here, Eaton failed to pay the 2018 and 2019 taxes after he filed his bankruptcy petition. Thus, when Eaton tendered the prepetition redemption amount to the clerk, there remained delinquent tax debt on the property.

¶ 65    Third, the property owners in *Street* appeared ready and willing to pay the redemption *before* the expiration of the deadline and would have but for their belief they had two more weeks to do so. They sought equitable relief about a week after they realized their mistake, and the circuit court extended the period by only four months. Here, on the other hand, Eaton's request (if it had been made) would extend the redemption deadline by more than three years.

¶ 66    Fourth, though *Street* did not involve an erroneous statement by a public official, it still had an element of mistake. In other words, the court found significant the fact that the property owners' failure to redeem by the deadline was based on their mistaken belief that the redemption deadline expired later than it actually did. In this case, there was no element of mistake. Eaton

made a deliberate choice to exercise his rights under federal law instead of exercising his state-law right to redeem, knowing full well that, if his Chapter 13 plan failed, he would be without recourse under state law.

¶ 67    In light of these important distinctions, we are skeptical that Eaton would be entitled to relief under the principles set forth in *Street*, especially given the *Street* court's limitation of its holding to the unique circumstances of that case. In any event, we hold Eaton to his forfeiture.

¶ 68                    D. Eaton Forfeited His Remaining Arguments

¶ 69    Finally, Eaton argues FINA should be barred—under the doctrines of collateral estoppel and waiver by participation—from arguing that Eaton had less than 60 months to pay the claim in full. According to Eaton, because FINA did not object to, or appeal from, the confirmation of his Chapter 13 plan, it "cannot now be heard to object to Eaton's opportunity to pay the claim over 60 months—let alone the fact he actually took substantially fewer than 60 months to do so." Further, he maintains, "FINA is collaterally estopped from arguing now that the redemption period somehow evaporated simply because it succeeded in lifting the stay well prior to the expiration of those 60 months." He also asserts that, by asking the court to toll the time in which to obtain and record the deed, FINA waived its argument that the bankruptcy court's decision to lift the stay had preclusive effect on the issue of its entitlement to issue the tax deed.

¶ 70    Eaton never raised these arguments in the circuit court, and they are, therefore, forfeited. See *id.* In any event, FINA's failure to object to the treatment of its claim in Eaton's bankruptcy did not foreclose its ability to later seek relief from the stay if it could demonstrate there was cause to lift the stay that arose after the plan was confirmed, such as a postconfirmation plan default. See *In re Morrow*, 495 B.R. 378, 386-87 (Bankr. N.D. Ill. 2013). And we fail to see how FINA's motion to toll, which it filed only to protect its state-law rights (see *Bryant*, 309 Ill. App. 3d at

191), precluded it from arguing that a Chapter 13 bankruptcy does not toll the redemption period. Accordingly, we reject these arguments.

¶ 71                                       III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 73    Affirmed.

***In re Application of the County Treasurer & ex officio County Collector***,
**2022 IL App (2d) 210689**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-TD-11; the Hon. Michael B. Betar, Judge, presiding. |
| **Attorneys for Appellant:** | Mark L. Shaw and Jennifer C. Neubauer, of Shaw Law Ltd., of Waukegan, for appellant. |
| **Attorneys for Appellee:** | Terry J. Carter and Jamie L. Schmidtke, of Carter Legal Group, P.C., of Chicago, and Paul M. Bach, of Bach Law Offices, Inc., of Northbrook, for appellee. |