2024 IL App (3d) 220134

Opinion filed February 6, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF WILL COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes and Special Assessments for the Year 2015 and Prior Years | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois,<br><br>Appeal No. 3-22-0134<br>Circuit No. 16-TX-297 |
| (Lily Investments, LLC, Petitioner-Appellee v. Will County Collector, Respondent-Appellant). | ) ) ) | Honorable<br>John C. Anderson,<br>Judge, Presiding. |

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF WILL COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes and Special Assessments for the Year 2015 and Prior Years | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois,<br><br>Appeal No. 3-22-0135<br>Circuit No. 18-TX-197 |
| (Sabrina Investments, LLC, Petitioner-Appellee v. Will County Collector, Respondent-Appellant). | ) ) ) | Honorable<br>John C. Anderson,<br>Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Peterson and Albrecht concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2015, petitioner Sabrina Investments, LLC (Sabrina), purchased the delinquent taxes on a property in Park Forest. In 2016, petitioner Lily Investments, LLC (Lily), purchased the delinquent taxes on a property in Crete. Sabrina and Lily[1] later petitioned for tax deeds under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2018)) and paid certain associated filing and service fees (petition costs). The property owners, however, pursued relief under chapter 13 (Chapter 13) of Title 11 of the United States Code, also known as the United States Bankruptcy Code (Bankruptcy Code) (11 U.S.C. § 1301 *et seq.* (2018)), and in January 2021, petitioners were granted sale-in-error orders under section 21-310(b)(2) of the Property Tax Code (35 ILCS 200/21-310(b)(2) (West 2020)). After receiving partial refunds from the Will County Clerk, Lily and Sabrina separately moved "to compel" respondent, the Will County Treasurer and *ex officio* County Collector of Will County (Treasurer), to comply with the sale-in-error orders by refunding their petition costs. The circuit court granted the motions.

¶ 2    In these consolidated appeals, the Treasurer argues he was not required to refund the petition costs because the petition costs were not posted to the tax judgment, sale, redemption, and forfeiture record (tax record) due to the property owners' bankruptcies. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                    A. Illinois Tax Sale Procedures and Bankruptcy

¶ 5    To frame our discussion, we begin with a basic overview of the tax-sale procedures of the Property Tax Code and a brief discussion of how a property owner's bankruptcy affects those procedures.

---

[1]We will refer to Lily and Sabrina collectively as petitioners where appropriate.

2

¶ 6        "Property taxes are due the year after the year in which they accrue." *In re Application of the County Treasurer & ex officio County Collector of Lake County*, 2022 IL App (2d) 210689, ¶ 6 (*Eaton*). "The taxes upon property, together with all penalties, interests[,] and costs that may accrue thereon" become "a prior and first lien on the property, superior to all other liens and encumbrances." 35 ILCS 200/21-75 (West 2018). The lien attaches in favor of the county on January 1 of the year in which the taxes are due, and when the taxes are paid, the lien is extinguished. *Id.* In Will County, property taxes are paid to the Treasurer, who serves *ex officio* as county collector. *Id.* § 19-35.

¶ 7        If, as in this case, the taxes are not paid, the county collector may apply for a judgment and order of sale. *Id.* § 21-150. If the court renders judgment on the application, the collector may sell the "property," that is, the tax lien, at an annual sale. *Id.* § 21-190. At the annual sale, persons who wish to purchase the lien bid based upon the percentage of interest they are willing to accept on the delinquent taxes, with the sale being made to the person who makes the lowest bid. *Id.* § 21-215. "If the purchaser pays all taxes, interest, and costs due, the county's lien is extinguished, and the county clerk must issue to the purchaser a certificate of purchase." *Eaton*, 2022 IL App (2d) 210689, ¶ 8 (citing 35 ILCS 200/21-250 (West 2018)).

¶ 8        The tax sale triggers a redemption period, during which the property owner may redeem the property by paying a certain amount calculated under section 21-355. See 35 ILCS 200/21-355 (West 2018). This amount includes petition costs if later expended by the purchaser (*id.* § 21-355(h)-(i)), provided those costs are "posted" to the tax record (see *id.* § 21-360)). In the case of property improved by a home, like here, the redemption period is generally two years and six months from the date of sale (*id.* § 21-350(b)), though it may be extended to three years from the date of sale (*id.* § 21-385).

3

"The certificate of purchase *** represents, (1) if the property owner redeems, the right to payment, via the county clerk, of the delinquent taxes and accrued penalty [citation], or (2) if the property owner fails to redeem by the deadline, the right to petition the circuit court for an order directing the clerk to issue a tax deed [citation]." *Eaton*, 2022 IL App (2d) 210689, ¶ 9.

¶ 9 If the property owner does not timely redeem, then the purchaser may obtain a tax deed and become the legal owner of the property. 35 ILCS 200/22-55 (West 2018). To do so, the purchaser must take certain steps *before* the redemption period expires. Between three and six months before the redemption period's expiration, the purchaser must (1) file a petition asking the circuit court to enter an order directing the county clerk to issue the deed and (2) provide notice in various manners. *Id.* §§ 22-10 to 22-30, 22-40. The property owner may redeem the property after the petition is filed. But when the redemption period expires, the owner's right to redeem is extinguished, and the purchaser may apply to the circuit court for an order on the petition. See *id.* §§ 21-355, 22-30. When the purchaser applies for the order, the court must direct the county clerk to issue the deed if the purchaser establishes it has met the requirements of section 22-40, including that he or she "has complied with all the provisions of law entitling him or her to a deed." *Id.* § 22-40(a). The purchaser must obtain the order, present it to the county clerk, and "take out" and record the deed within one year of the redemption period's expiration. *Id.* § 22-85. If the purchaser fails to do so, the certificate of purchase or deed, and the underlying sale, are void, and the purchaser will not be reimbursed. *Id.* An injunction or court order, such as the automatic stay in bankruptcy proceedings, that prevents the purchaser from obtaining and recording the deed tolls the one-year period in which the purchaser must "take out" the deed. *Id.*

¶ 10    Throughout this process, the county clerk, not the county collector, generally keeps and maintains records of tax sales. See *id.* § 21-160 (the county collector shall create an annual tax record each year, which is kept in the county clerk's office); *id.* § 21-230 (the county clerk enters on the tax record both sales and redemptions); *id.* § 21-250 (the county clerk issues certificates of purchase and duplicate certificates of purchase; the county clerk also records in the "tax sale and judgment book" whether a duplicate certificate has been issued); *id.* § 21-251(a) (the county clerk must create and maintain a permanent registry of any owners or assignees of certificates of purchase issued pursuant to any tax sale); *id.* § 21-252 (the county clerk may make an index of tax-sale records to be kept in its office and open to inspection); *id.* § 21-255 (the county clerk's books and records, when certified by the clerk, are *prima facie* evidence to prove the sale of taxes, redemption, or payment of taxes); *id.* § 21-310(d) (the county clerk makes entry into the tax record that the property was erroneously sold); *id.* § 21-397 (the county clerk makes entry into the tax record that a redemption has been set aside by the court).

¶ 11    Aside from redemption, a property owner has another option to avoid forfeiture of the real property upon the redemption period's expiration: he or she may seek relief under the Bankruptcy Code. The purchaser's tax lien may be treated as a secured claim in a Chapter 13 bankruptcy, and in such cases, the property owner is entitled to pay the claim over a period not exceeding 60 months. See *In re LaMont*, 740 F.3d 397, 406-09 (7th Cir. 2014); accord *Eaton*, 2022 IL App (2d) 210689, ¶ 45. While the bankruptcy is pending, an automatic stay prevents most actions against the debtor's property. See 11 U.S.C. § 362(a) (2018). The federal right to treat a tax lien under Chapter 13 is distinct from the state law right of redemption. ¶ 46. Thus, "the treatment of a claim in a Chapter 13 plan is not a formal redemption and has no tolling effect on the redemption period." *Id.* (citing *LaMont*, 740 F.3d at 410). In other words, the redemption period will expire

notwithstanding the fact that an automatic stay prevents the purchaser from taking out and recording the deed—"[t]he redemption period expires when it expires." *LaMont*, 740 F.3d at 410.

¶ 12　　　　After a property owner files bankruptcy, the purchaser may (1) accept payment under the property owner's plan, (2) obtain relief from the stay in the bankruptcy court and proceed in state court to take out and record the tax deed, or (3) obtain in state court an order declaring the sale a "sale in error." See *Gan B, LLC v. Sims*, 575 B.R. 375, 379-80 (N.D. Ill. 2017); see 35 ILCS 200/21-310 to 21-335 (West 2020). The Property Tax Code does not set any temporal limitation on when the purchaser must choose a sale in error. We now turn to the relevant facts.

¶ 13　　　　　　　　　　　　　B. Lily's Tax Purchase

¶ 14　　　　Lisa Crockett-Davis owned the property in Crete. She did not pay the real estate taxes due for the 2015 tax year, and on November 29, 2016, Lily purchased the delinquent taxes. Lily later paid the 2016 and 2017 taxes.

¶ 15　　　　On April 15, 2019, Crockett-Davis petitioned for relief under Chapter 13 of the Bankruptcy Code, triggering an automatic stay.

¶ 16　　　　On June 27, 2019, Lily petitioned the circuit court for an order directing the county clerk to issue a tax deed. Per the petition, the redemption period would expire on November 25, 2019, at which time Lily would apply for an order directing the clerk to issue a tax deed. Lily also served the notices required by the Property Tax Code. In connection with its efforts, Lily paid the following petition costs: (1) $209 to the clerk of the circuit court for filing the tax deed petition, (2) $716.45 to a process server for serving notices, (3) $173.37 to the clerk of the circuit court for mailing notices, (4) $411.77 to a newspaper for publishing notice, and (5) $65 for a tract search. The petition costs totaled $1575.59.

¶ 17    In December 2020, Lily petitioned for a sale-in-error order under section 21-310 of the Property Tax Code. Lily requested a refund of the amounts it had paid, including the costs posted to the tax record and interest. See 35 ILCS 200/21-310(d), 21-315 (West 2020). Lily did not itemize the costs for which it sought reimbursement or attach the file-stamped receipts. The Treasurer did not contest the petition.

¶ 18    In January 2021, the court granted Lily's petition and declared a sale in error. In the sale-in-error order, the court directed the Treasurer to "refund the amounts paid and any costs and interests [*sic*] at a rate of 1% per month from the date of sale to the date of payment *** as required by [sections 21-315 through 21-335 of the Property Tax Code (35 ILCS 200/21-315 through 21-335) (West 2020)]." The sale-in-error order did not specify the costs due to Lily.

¶ 19                                C. Sabrina's Tax Purchase

¶ 20    Judith Rasinskis owned the property in Park Forest. She did not pay the property taxes due for the 2014 tax year, and on December 3, 2015, Sabrina purchased the delinquent taxes. Sabrina later paid the 2015, 2016, and 2017 taxes.

¶ 21    On August 6, 2018, Sabrina petitioned the court for an order directing the county clerk to issue a tax deed. It also endeavored to serve the required notices. In connection with its efforts, Sabrina paid the following petition costs: (1) $384 to the clerk of the circuit court for filing the tax deed, (2) $843.80 to a process server for serving notices, (3) $231.84 to the clerk of the circuit court for mailing notices, (4) $500.96 to a newspaper for publishing notice, and (5) $65 for a tract search. The petition costs totaled $2025.60. Sabrina presented receipts for each of the petition costs to the county clerk, and the county clerk file-stamped each receipt.

¶ 22    On November 27, 2018, Rasinskis petitioned for relief under Chapter 13 of the Bankruptcy Code, triggering an automatic stay.

7

¶ 23    In December 2020, Sabrina petitioned for a sale in error. Sabrina asked the court to refund the amounts it had paid, including the costs posted to the tax records and interest. Sabrina did not itemize the costs for which it sought reimbursement or attach the file-stamped receipts. The Treasurer did not contest the petition.

¶ 24    In January 2021, the circuit court granted Sabrina's petition and declared a sale in error. In the sale-in-error order, the court directed the Treasurer to "refund the amounts paid and any costs and interests at a rate of 1% per month from the date of sale to the date of payment *** as required by [sections 21-315 through 21-335 of the Property Tax Code]." The order did not specify the costs due to Sabrina.

¶ 25                              D. Petitioners' Motions to Compel

¶ 26    After Lily and Sabrina received their refunds, in December 2021 and January 2022, respectively, they filed "motion[s] to compel [the Treasurer] to comply" with the sale-in-error orders. Lily asserted the Treasurer had not included any interest in the refund, and Sabrina asserted the Treasurer had not included all the interest that was due. They contended that, under the Property Tax Code, they were entitled to interest on each subsequent tax payment they made at the rate of 1% per month, from the date they paid the taxes through the date of payment by the Treasurer. Lily and Sabrina attached to their motions the file-stamped receipts for the petition costs.

¶ 27    The Treasurer filed a written response to Lily's motion but not Sabrina's. He attached an affidavit from Julie Shetina, his chief deputy. Shetina averred that Crockett-Davis filed bankruptcy on April 15, 2019, the Treasurer and the county clerk informed Lily of the filing on April 25, 2019, and the bankruptcy court notified Lily of Crockett-Davis's bankruptcy as well. Shetina further averred that the Treasurer "paid out" the sale in error, including interest, with checks totaling $15,062.88. An attached itemization showed the refund did not include petition costs. Finally,

8

Shetina averred, "No additional fees were posted to the tax certificate due to the open bankruptcy, thus fees were not paid out as part of the sale in error." Shetina's affidavit included a declaration that her averments were "true and correct to the best of [her] knowledge."

¶ 28    The Treasurer contended that under section 21-315 of the Property Tax Code (*id.* § 21-315), he was not required to refund costs that were not posted to the tax record. According to the Treasurer, Lily's filing of the tax deed petition and its payment of the associated costs violated the automatic stay and were "void *ab initio*." Therefore, the Treasurer exercised his discretion and did not post the petition costs to the tax record.

¶ 29    Lily replied that filing a tax-deed petition and paying the associated petition costs did not violate the automatic stay provisions, as those actions were necessary to perfect its security interest in the property. Lily dismissed Shetina's affidavit as inconsequential, asserting it had posted its petition costs with the county clerk and presented file-stamped receipts to confirm that fact. It argued that, under section 21-315, it was entitled to a refund for those costs. Finally, Lily asserted the Treasurer now owed additional interest because full payment had been delayed.

¶ 30    On March 3, 2022, the court held a hearing on Lily's and Sabrina's motions. The record does not contain any indication the matters were formally consolidated. Nor does it contain a report of the proceedings or an acceptable substitute. See Ill. S. Ct. R. 323 (eff. July 1, 2017). The circuit court granted Lily's and Sabrina's motions, entering separate written orders. Pertinent here, the court found, in each case, the following:

> "The receipts for the costs incurred by Petitioner for filing the Petition for Tax Deed and serving notices were tendered to the Will County Clerk in accordance with [sections 21-355 and 21-360 of the Property Tax Code (35 ILCS 200/21-355, 21-360 (West 2018))],

9

and the receipts were accepted by the Will County Clerk as is evident by the stamp of the Will County Clerk on the receipts attached to the briefs."

The court ordered the Treasurer to tender refunds to Lily and Sabrina, in part consisting of $1575.59 and $2025.60 in petition costs, respectively, as reflected in the file-stamped receipts.

¶ 31 On March 31, 2022, the Treasurer filed notices of appeal in both cases. The appeal in Lily's case was docketed as appeal No. 3-22-0134, and the appeal in Sabrina's case was docketed as appeal No. 3-22-0135. The notice of appeal in Sabrina's case is captioned correctly but states the Treasurer is seeking review of the circuit court's March 3, 2022, order granting *Lily's* motion to compel. On the Treasurer's motion, we consolidated the appeals.

¶ 32 II. ANALYSIS

¶ 33 On appeal, the Treasurer contends the circuit court erred by granting Lily its petition costs.[2] Specifically, the Treasurer argues that Lily's filing of the tax-deed petition and service of notice as required by the Property Tax Code violated the automatic stay in effect during Crockett-Davis's bankruptcy. Accordingly, he exercised discretion and did not post Lily's petition costs to the tax record. As a result, he argues, Lily is not entitled to a refund of those costs per section 21-315.

¶ 34 A. Jurisdiction

¶ 35 Petitioners assert we lack jurisdiction over the Treasurer's appeals. According to petitioners, the circuit court's January 2021 sale-in-error orders were final and appealable. And because the Treasurer did not appeal the sale-in-error orders within 30 days and these appeals, in effect, challenge those orders, the Treasurer's appeals are untimely. Additionally, petitioners assert the court's March 3, 2022, orders granting their motions to compel were not final and appealable

---

[2]Except as to the issue of our jurisdiction, we limit our discussion to the court's order granting Lily its petition costs. As we explain below, the Treasurer has forfeited any contention that the court's order in Sabrina's case was error.

because those orders "are only incidental to the parties' ultimate rights as already adjudicated" in the sale-in-error orders and "were entered merely for the purpose of carrying out or executing the matters which had been determined by the previous orders."

¶ 36      The Illinois Constitution provides a party the right to appeal a final judgment. Ill. Const. 1970, art. VI, § 6; see Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). When, as here, a timely postjudgment motion is not filed, a notice of appeal must be filed within 30 days of entry of the final judgment. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). If the party elects to not appeal a final and appealable order, the appellate court lacks jurisdiction to consider the propriety of that order in an appeal from a subsequent order in the same case. *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 218 (1999). Whether we have jurisdiction is a question of law, which we review *de novo*. *In re Marriage of Crecos*, 2021 IL 126192, ¶ 11.

¶ 37      Petitioners' argument is grounded on a faulty premise—that the sale-in-error orders were final and appealable upon their entry in January 2021. An order is final and appealable when it terminates the litigation on the merits or disposes of the parties' rights, either on the entire controversy or some separate part. *In re Estate of Cerami*, 2018 IL App (1st) 172073, ¶ 31. Stated differently, an order is final "if it fixes absolutely and finally the rights of the parties in the lawsuit *** [and] determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." (Internal quotation marks omitted.) *Id.*

¶ 38      A sale-in-error order can be the final and appealable judgment in tax-deed proceedings. See *In re Application of County Collector*, 395 Ill. App. 3d 155, 160 (2009). In this case, however, the sale-in-error orders were not final and appealable. Petitioners' sale-in-error petitions each included a request for a refund of costs per the Property Tax Code but did not specify the costs sought. The court's sale-in-error orders likewise did not specify the costs petitioners were entitled

11

to recover; rather, the orders awarded petitioners "any costs *** as required by [sections 21-315 through 21-335 of the Property Tax Code]." In an action that involves a claim for costs arising from the same basis as the action itself, an order that awards costs but does not specify their amount is not final and appealable. *Home State Bank/National Ass'n v. Potokar*, 249 Ill. App. 3d 127, 136-37 (1993); see *Miller v. Pollution Control Board*, 267 Ill. App. 3d 160, 164 (1994).

¶ 39    Here, the specific amount of costs due was not addressed when the circuit court entered the sale-in-error orders. Thus, the sale-in-error orders were not final judgments. Rather, the judgments became final on March 3, 2022, when the circuit court granted petitioners' motions to compel and specified the amount of costs to which petitioners were entitled. That order "fixe[d] absolutely and finally the rights of the parties" and "determine[d] the litigation on the merits so that, if affirmed, the only thing remaining [was] to proceed with the execution of the judgment." (Internal quotation marks omitted.) *Cerami*, 2018 IL App (1st) 172073, ¶ 31. The Treasurer filed his notices of appeal within 30 days of those orders, on March 31, 2022. Accordingly, we have jurisdiction to consider the Treasurer's appeals under Rules 301 and 303.

¶ 40                                B. Forfeiture

¶ 41    In his brief, the Treasurer focuses on the circuit court's order granting Lily its petition costs. He makes one passing reference to Sabrina's case: "A similar case involving the same issue of refunding non-posted costs was consolidated with this case for hearing." While these appeals present a similar question, the relevant facts differ in an important respect and require different analysis. Crockett-Davis filed bankruptcy *before* Lily filed its tax-deed petition and Rasinskis filed bankruptcy *after* Sabrina filed its tax-deed petition. We find the Treasurer has forfeited review of the court's order granting Sabrina its petition costs by failing to present any argument challenging

12

that order. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶¶ 28-30.

¶ 42                                    C. Standard of Review

¶ 43        The issue in this case is whether the circuit court properly granted Lily its petitions costs when those costs were incurred while the automatic stay in Crockett-Davis's bankruptcy was in effect. Whether a court has the authority to award costs is a question of law subject to *de novo* review. *Peet v. Voots*, 386 Ill. App. 3d 404, 406 (2008). However, when a court exercises its proper authority to award costs, we generally review its decision under an abuse of discretion standard. See *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007).

¶ 44        In the present case, we find it appropriate to review *de novo* the circuit court's decision to grant Lily its petition costs. To be sure, the Treasurer's appeal challenges the amount of costs imposed. However, under the circumstances of the present case, this issue involves a question of law: whether the petition costs were "posted" to the tax record within the meaning of the Property Tax Code when Lily presented receipts to the clerk and the clerk stamped them "filed." To answer this question, we must construe the Property Tax Code, a task subject to *de novo* review. *Eaton*, 2022 IL App (2d) 210689, ¶ 38. *De novo* review is further warranted because the court in this case did not hold an evidentiary hearing on the issue of costs. It decided the matter based on documentary evidence and the parties' written and oral arguments. In other words, the circuit court decided the matter on the same factual record that is before this court. The circuit court in this case "was in no superior position than any reviewing court to make findings, and so a more deferential standard of review is not warranted." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). Accordingly, we will review the court's decision *de novo*. See *id.*; *Board of Education of Du Page High School District 88 v. Pollastrini*, 2013 IL App (2d) 120460, ¶¶ 13-14 (explaining *de novo*

13

review is proper when the decision is based solely on documentary evidence); see also *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 67 (Ellis, J., specially concurring) ("When we perform the identical function as the [circuit] court, we have always considered our review to be *de novo*.").

¶ 45                                              D. Completeness of the Record

¶ 46        Lily notes the record does not contain a report of proceedings or an acceptable substitute for the March 3, 2022, hearing on its motion to compel. As a result, Lily argues, the record is insufficient to support the Treasurer's claim of error, and we must affirm the judgment.

¶ 47        The appellant has a duty to present this court with a sufficiently complete record of the circuit court proceedings to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record, we presume the circuit court's order was in conformity with the law and had a sufficient factual basis. *Id.* at 392. And we resolve against the appellant "[a]ny doubts which may arise from the incompleteness of the record." *Id.*

¶ 48        Generally, the record must contain a report of proceedings or an acceptable substitute to permit this court to review a claim of error. However, this is not a rigid principle. When "the record contains that which is necessary to dispose of the issues in the case," appellate review is not precluded by the absence of a report of proceedings. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996). "[I]n instances where the court has all the evidence it needs to make a proper decision on the merits under the appropriate standard of review, the court may undertake substantive analysis of the case even if the record is not fully complete." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). "The test to be applied is whether this court is in the same position as the trial court with respect to the legally operative facts of the case." (Internal quotation marks omitted.) *Id.*

14

¶ 49 We find the record is sufficient to consider the Treasurer's challenge to the circuit court's order. The record, while incomplete, contains all the evidence necessary to make a proper decision on the merits under the appropriate standard of review. We occupy the same position as the circuit court with respect to the legally operative facts of this case; that is, we must evaluate documentary evidence presented by the parties and determine whether the petition costs were posted to the tax record within the meaning of the Property Tax Code. Thus, the absence of a report of proceedings or acceptable substitute in this case does not require us to affirm the circuit court's judgment. We will, however, resolve any doubts against the Treasurer. *Foutch*, 99 Ill. 2d at 392.

¶ 50 E. The Circuit Court Did Not Err by Awarding Lily Its Petition Costs

¶ 51 As noted, this appeal requires us to construe certain provisions of the Property Tax Code. Thus, our primary objective "is to ascertain and effectuate the legislature's intent." *Hacker v. Halley*, 2021 IL App (2d) 210050, ¶ 20. "We are guided by the statute's language, which is the best indication of that intent, and we must apply the statute as written, giving the words used their plain and ordinary meaning." *Eaton*, 2022 IL App (2d) 210689, ¶ 38. Further, we must consider the entire statutory context in which the relevant provision appears. *Hacker*, 2021 IL App (2d) 210050, ¶ 21. And we will not "add provisions that are not found in a statute, nor [can we] depart from [the] statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." (Internal quotation marks omitted.) *Eaton*, 2022 IL App (2d) 210689, ¶ 38.

¶ 52 In this case, Lily elected to seek a sale-in-error order instead of accepting payments under Crockett-Davis's Chapter 13 plan or seeking relief from the stay to pursue a deed. Section 21-310(b)(1) of the Property Tax Code gives a tax purchaser the right to a sale-in-error order when, as here, the property owner filed bankruptcy after the tax sale but before a deed is issued. 35 ILCS

200/21-310(b)(1) (West 2020). Section 21-310(d) states that upon the court's entry of a sale-in-error order,

> "the county clerk shall make entry in the [tax record] that the property was erroneously sold, and the county collector shall, on demand of the owner of the certificate of purchase, refund the amount paid, except for the nonrefundable $80 fee paid, pursuant to Section 21-295, for each item purchased at the tax sale, pay any interest and costs as may be ordered under Sections 21-315 through 21-335, and cancel the certificate so far as it relates to the property." *Id.* § 21-310(d).

Section 21-315(a) provides that "the amount refunded shall *** include all costs paid by the [purchaser] which were posted to the [tax record]." *Id.* § 21-315(a). Section 21-335 requires the purchaser to include a claim for costs in his or her sale-in-error petition, and "[a]ny claim for *** costs which is not included in the petition is waived." *Id.* § 21-335. Thus, upon entry of a sale-in-error order, the Property Tax Code requires the county collector, upon demand, to refund "all costs" paid by the purchaser that are "posted" to the tax record (*id.* § 21-315), provided the purchaser asked for such costs in its sale-in-error petition (*id.* § 21-335).

¶ 53 Lily asked for costs in its sale-in-error petition. This case therefore turns on whether the petition costs were posted to the tax record. Lily argues the petition costs were posted when it submitted the receipts to the county clerk and the county clerk file-stamped them. The Treasurer asserts the costs were not posted when the county clerk file-stamped the receipts. Instead, the Treasurer maintains costs are posted to the tax record only when he "determines, upon full review, what should properly be posted to the [tax record]." And in this case, he determined that Lily's petition costs could not properly be posted to the tax record because of the pending bankruptcy and automatic stay.

16

¶ 54    To resolve the parties' dispute, we turn to section 21-360 of the Property Tax Code, which reads in part as follows:

> "Except as otherwise provided in Section 21-355, the county clerk shall not be required to include [among other things, petition costs] in the payment for redemption or the amount received for redemption, nor shall payment thereof be a charge on the property sold for taxes, unless *the tax certificate holder has filed and posted with the county clerk* prior to redemption and in any event not less than 30 days prior to the expiration of the period of redemption or extended period of redemption an official, original or duplicate receipt for payment of those *** costs ***. Upon submission of an official original or duplicate receipt, the county clerk shall stamp the date upon each document received." (Emphasis added.) *Id.* § 21-360.

¶ 55    The text of section 21-360 plainly places on *the tax purchaser* the obligation to "file[ ] and post[ ]" the costs before redemption and no later than 30 days before the redemption period's expiration. *Id.* The text also plainly indicates the purchaser satisfies that obligation when he or she presents an official original or official duplicate receipt for the payment of those costs and the clerk stamps the date on the receipt. *Id.* Thus, filing and posting costs is accomplished by (1) the tax purchaser's presentation of an official petition cost receipt and (2) the clerk's file-stamping of said receipt. If the tax purchaser fails to satisfy its obligation, then those costs shall not be a charge on the property and may not be recovered by the purchaser pursuant to a sale in error.

¶ 56    In support of its motion to compel, Lily attached file-stamped copies of the petition cost receipts it submitted to the county clerk. The record thus establishes, and the circuit court correctly found, that Lily "filed and posted" the petition costs to the tax record and, under section 21-315,

17

was entitled to a refund of those costs. Accordingly, the court correctly ordered the Treasurer to refund Lily its petition costs.

¶ 57    Shetina's affidavit does not change our conclusion. First, we note Shetina is employed by the Treasurer, not the county clerk, and it is not entirely clear how she would have the personal knowledge necessary to aver that the costs were not posted to the tax record.[3] The tax record is kept and maintained by the county clerk, not the Treasurer. But even taking her averments as true, Shetina merely concluded, "No additional fees were posted to the tax certificate due to the open bankruptcy." Simply put, Shetina offered nothing to rebut the fact that petition cost receipts were posted, that is, were presented to and stamped by the clerk as contemplated by section 21-360.

¶ 58    In reaching our conclusion, we reject the Treasurer's assertion that he has the discretion to undertake a "full review" and determine "what should properly be posted to the [tax record]." First, the Treasurer provides no authority for his assertion, thus forfeiting the argument. *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 33. In any event, section 21-360 does not authorize the Treasurer—or for that matter, any public official—to determine which costs are posted to the record; it does not mention the county treasurer or county collector at all. Indeed, as noted above, the Property Tax Code tasks the county clerk with keeping records of the tax-sale process. To accept the Treasurer's assertion would require us to (1) add it into the Property Tax Code and (2) ignore the legislature's determination that the county clerk, not the county collector, serves as the recordkeeper in tax-sale proceedings. We may do neither. *Eaton*, 2022 IL App (2d) 210689, ¶ 38 (a court will not add provisions, exceptions, limitations, or conditions not expressed by the legislature); *Hacker*, 2021 IL App (2d) 210050, ¶ 21 (a statute must be construed in context).

_____

[3]Lily argues we should disregard Shetina's affidavit for this reason.

¶ 59    Moreover, even if we assume the Treasurer has discretion to determine which costs are posted to the tax record, the Treasurer's reason for not deeming those costs posted here—Crockett-Davis's pending bankruptcy and the automatic stay—was erroneous. On this point, we find *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001), and *In re Wilson*, 536 B.R. 218 (Bankr. N.D. Ill. 2015), persuasive.

¶ 60    In *Bates*, the court considered whether the actions of the tax purchaser "to enforce [its] tax sale rights against the Bates violate[d] the automatic stay so as to require a declaration that [the tax purchaser's] tax deed [was] void." *Bates*, 270 B.R. at 470. It found that while the tax purchaser's application for an order on the petition violated the automatic stay, its filing of the petition and service of the required notices did not. *Id.* In reaching its conclusion, the court explained, under section 362(a) of the Bankruptcy Code (11 U.S.C. § 362(a) (2018)), a tax purchaser "plainly [was] prohibited from taking the final steps, *after expiration of the redemption period*, needed to obtain a tax deed: applying to the state court for an order directing the issuance of a tax deed, and appearing at a hearing on the application." (Emphasis added.) *Bates*, 270 B.R. at 467. However, under section 362(b)(3) (11 U.S.C. § 362(b)(3) (2018)), the acts of filing the tax-deed petition and serving the required notices are excepted from the automatic stay. Those acts "do not result directly in the issuance of a deed, but are needed to preserve the tax purchaser's right to do so." *Bates*, 270 B.R. at 469.

¶ 61    In *Wilson*, the court held that the tax purchaser's filing of a tax-deed petition did not violate the automatic stay; rather, the tax purchaser violated the stay when it applied for an order on its petition and appeared in state court to obtain the deed. *Wilson*, 536 B.R. at 223-24. Relying on *Bates*, the court reasoned that the filing of the tax-deed petition and service of the required notices

19

were "steps necessary to maintain the tax purchaser's property interest" and were therefore excepted from the automatic stay under section 362(b)(3) of the Bankruptcy Code. *Id.*

¶ 62    The reasoning of *Bates* and *Wilson* is sound. As *Bates* recognized, the Property Tax Code requires the tax purchaser to meet certain statutory prerequisites before it is entitled to a deed upon expiration of the redemption period. The acts of meeting those prerequisites do not affect the property owner's ownership of the property. The property owner's rights are affected only after the redemption period's expiration and only then after the tax purchaser takes these further necessary, *affirmative* steps to obtain the deed: (1) applying for an order on the petition, (2) appearing in court, and (3) presenting evidence to satisfy the court it has complied with the relevant provisions of the Property Tax Code. In this context, *Bates* and *Wilson* make sense, and we agree with their conclusion that the mere filing of a tax-deed petition and service of notice is excepted from the automatic stay. And, if these actions do not violate the stay, we fail to see how incurring costs to take these steps violates the stay.

¶ 63    *LaMont* and *Sims*, relied on by the Treasurer, do not change our conclusion. Admittedly, in *LaMont*, the court stated the tax purchaser's "attempt to obtain a tax deed is an act to obtain possession of property of the estate and to enforce his lien for taxes" and was therefore "properly forbidden by the stay." *LaMont*, 740 F.3d at 410. In *Sims*, the court stated, "the stay bars a tax purchaser's attempt to enforce its lien by petitioning for an order to issue a tax deed." *Sims*, 575 B.R. at 380. But, unlike *Bates* and *Wilson*, neither *Lamont* nor *Sims* specifically addressed whether the filing a tax-deed petition violated the automatic stay. In both cases, the issues before the court were whether a tax lien is a claim that is treatable in bankruptcy and whether the tax purchaser had correctly been denied relief from the automatic stay.

20

¶ 64　　　　Both *LaMont* and *Sims* are distinguishable on their facts, too. In *LaMont*, the tax purchaser not only filed a tax-deed petition but also applied for an order on the petition and appeared in the circuit court on it. *LaMont*, 740 F.3d at 401-02. After the circuit court denied the application, the tax purchaser sought relief from the stay. *Id.* at 402. In *Sims*, the tax purchaser filed its tax-deed petition before the property owner filed bankruptcy. This means, necessarily, the court could not have considered whether filing the petition violated the stay—the stay was not in effect at the time the tax-deed petition was filed. *Sims*, 575 B.R. at 382.

¶ 65　　　　In sum, the circuit court correctly awarded Lily its petition costs. Those costs were posted to the tax record when Lily presented the receipts to the clerk and the clerk file-stamped them. The Treasurer was therefore required to refund those costs pursuant to the sale in error.

¶ 66　　　　　　　　　　　　　　　III. CONCLUSION

¶ 67　　　　For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 68　　　　Affirmed.

*In re Application of the County Treasurer & ex officio County Collector of Will County,*
**2024 IL App (3d) 220134**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, Nos. 16-TX-297, 18-TX-197; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | James W. Glasgow, State's Attorney, of Joliet (Scott Pyles and Donna Hanson, Assistant State's Attorneys, of counsel), for appellant. |
| **Attorneys for Appellee:** | Joseph D. Ryan, of Law Offices of Joseph D. Ryan, P.C., of Highland Park, and Timothy J. Storm, of Barrington, for appellees. |